**OLIJAN, Plaintiff-Appellant v LUBLIN (GUDLIN), Defendant-Appellee.**

Ohio Appeals, 8th District, Cuyahoga County.

No. 18994. Decided ——, 1943.

Robert Merkle, Cleveland, for plaintiff-appellant.
Land & Land, Cleveland, for defendant-appellee.

## OPINION

By SKEEL, J.

This action was filed in the Probate Court for the determination of heirship. The plaintiff-appellant Eva Olijan, on whose behalf the petition was filed by D. N. Stanogevitch as Consul General of the Kingdom of Yugoslavia, alleges by her petition that she is a resident and subject of the Kingdom of Yugoslavia; that she is the widow of one Mike Olijan who died testate on or about September 23, 1938, a resident of Cuyahoga County in the State of Ohio; that the alleged will of the said deceased which was admitted to probate on September 29, 1938, and letters testamentary issued therein by the Probate Court to the defendant Rose Olian, purported to devise and bequeath the property of the deceased to the defendant Lublin. The plaintiff further claims to be the widow of the deceased and as such, filed in the Probate Court an election to take under the law. The plaintiff then asks that the rights of heirship be determined.

The defendant. Rose Lublin formerly known as Rose Olijan (Olian) by answer admitted the death of the deceased, the probate of the will and her appointment as executrix and that she is a beneficiary by the provisions of the said will. This defendant denies that the plaintiff is the widow of the deceased and alleges that she is in fact the widow of Mike Olijan (Olian).

The plaintiff, to support the issues for which she contends. first attempted to prove the law of the Kingdom of Yugoslavia with respect to the place where the official records of births, marriages and deaths are kept. She contended that churches, recognized by the government, are by law the legal custodians of the vital statistics of the Kingdom. The means by which the laws of a foreign country may be established in a court of law in this state is provided by §11498 GC, which provides:

"Printed copies of written law enacted by another state, a territory of the United States or foreign governments, proved or purporting to have been published by its authority, or proved to be commonly admitted as evidence of the existing law in the courts or tribunals thereof, respectively. on all occasions, by the courts and officers of this state, shall be admitted as presumptive evidence of such law."

In the instant case however, the plaintiff does not rely upon the provisions of the statute as the means of proving the laws of the Kingdom of Yugoslavia which are relied upon as the basis of her case. Instead of producing printed copies of the particular statutes relied upon, she called as a witness one Dushan D. Silashki a member of the Bar of Akron, Ohio, who has never been admitted to the practice of law in the Kingdom of Yugoslavia. This witness was permitted to testify as to his opinion of what the rules of law are in Yugoslavia as to the recording of vital statistics. This method of establishing the laws of a foreign country is permissible if the witnesses called are qualified. The testimony which was given to support the qualifications of Mr. Silashki is, to say the least, meager. Having visited Yugoslavia for two short periods of time and having scanned a lawbook or two at the Yugoslavia Embassy in Washington would hardly qualify even a practitioner at the Ohio Bar as an expert on the laws of such foreign country. The witness's testimony is therefore of little or no value whatever. Generally, one who is presented as an expert to testify as to the law of another state or foreign country, is a practitioner of that state or country or because of his position he has had a reasonable opportunity to acquaint himself with its provisions.

Smith v Rogers, 16 Oh Ap, 110 at page 116; Brady v Palmer, 19 C. C., 688.

In the case of Larwell v Hanover Savings Fund Society, 49 Oh St, 274 at page 281, the court states the rule by saying that one desiring to establish the law of a sister state can do so by presenting "depositions of witnesses learned in the law, and of long and extensive practice in the courts of that state."

The only other evidence introduced and received by the court to establish the laws of Yugoslavia with regard to the custody of the records of vital statistics, was the affidavit or certificate of Konstantin Tolich, Minister of the Kingdom of Yugoslavia to the United States of America. This certificate claimed to be admissible by reason of the terms of the treaty between the two nations.

The terms of this treaty are contained in plaintiff's exhibit 13 entitled, "Convention between the United States and Serbia." Article XI of this treaty authorizes the Consul General of Serbia to act on behalf of any subject of the Kingdom absent from this

country with regard to any property rights of such subject that are under judicial investigation in the United States. Article X provides for the admissibility into evidence of certain contracts and official documents duly "authenticated and legalized by the Consul General, etc." Article IV provides for the taking of the testimony of consular officers who are citizens of the appointing country, as follows:

"When a court of one of the two countries shall desire to receive the judicial declaration or deposition of a consul general, consul, vice-consul, consular agent, who is a citizen of the state which appointed him, and who is engaged in no commercial business, it shall request him in writing to appear before it and in case of his inability to do so, it shall request him to give his testimony in writing or shall visit his residence or office to obtain it orally."

"It shall be the duty of such officer to comply with this request with as little delay as possible."

It must be noticed in this case that the Consul General of the Kingdom of Yugoslavia has, in the instant case, invoked the jurisdiction of the court for the determination of the legal status of one of the subjects of the Kingdom of Yugoslavia. It would seem to follow that the evidence of its own ministers or consular officers should be presented in accord with its treaty provisions. The record in the case, insofar as the affidavit or certificate of the minister of the Kingdom of Yugoslavia fails to show that any of the requirements of the treaty were complied with before such testimony was taken.

We conclude, therefore, that the court was in error in ▮▮▮▮▮▮▮ receiving into evidence Exhibit 17, the affidavit or certificate of the Minister of the Kingdom of Yugoslavia to the United States.

Jones on Commentaries, 2nd Ed. Vol. 1, page 677:

"Consular seals: The seals of the consuls of our own government are, of course, noticed here just as those of other governments are noticed in their respective countries. But the seal of the consul is only noticed when affixed to consular documents in the legal sense of the term. Consuls, it is said, are officers known to the law of nations, and are entrusted with high powers. They are not, however, entrusted with the power of authenticating the laws of foreign nations. They are not the keepers of those laws. They can grant no official copies of them. There appears no reason for assigning to their certificates respecting a foreign law, any higher or different degree of credit than would be assigned to their certificates of any other fact."

There being, therefore, no credible evidence in the record tending to establish the authenticity of the documentary evidence offered as exhibits 2, 3, and 4, and their translations, 5, 6, and 7, which pur-

port to be certified copies of the family tree, a copy of the marriage certificate of Mike Olijan and the plaintiff, Eva Olijan, and an ex parte statement of the plaintiff, Eva Olijan, the plaintiff's case must fail.

There are other reasons which appear on the face of the record for refusing to receive these exhibits into evidence. Exhibit 4 and its translation (plaintiff's exhibit 7) do not purport to be a part of any public record and being an ex parte statement under oath, not admissible upon any ground. This is equally true of exhibits 9 and 12.

When plaintiff's exhibit 2 (translation being plaintiff's exhibit 5) is examined, it shows very clearly that in some respects, at least, it is founded upon 'hearsay.' It discloses that Mike Olijan died in America on September 23, 1938, and that he was not divorced. What could have been the source of this information so far as the church records are conerned? The only possible answer to this question is that the record, in part at least, was made up from hearsay. We find that exhibits 8 and 11 carry the same character of information. On the face of the exhibits themselves. therefore, considerable doubt is raised as to whether or not they are, in fact, public records of a character that should be permitted without direct evidence as to their authenticity to effect personal and property rights.

Coming to the conclusion that there is no credible evidence in the record to support the claims of the plaintiff, for the reasons just given, it becomes unnecessary to more than comment on the conflict of claimed legal presumptions which result from the alleged marriage of the plaintiff with the deceased in 1900 in Yugoslavia and his admitted marriage with the defendant Rose Lublin. in 1917 at Pittsburgh, Pa.

There is a presumption that any marriage once solemnized continues until terminated by death or by a decree of a court of competent jurisdiction, where both parties are before it by due process of law.

There is also a presumption that a marriage which has been solemnized in accordance with the laws of the jurisdiction where the ceremony is performed, is valid.

This question was given some consideration by the Supreme Court, in the case of **Industrial Commission of Ohio v Dell, 104 Oh St, 389.** The court. in the third paragraph of the syllabus said:

"Where it is stipulated that both marriages have been lawfully solemnized and the record is silent as to whether there has been a divorce of the parties to the first marriage, there is a presumption that the status of the parties to the first marriage continues, and the burden is upon the parties claiming the validity of the second marriage to overcome such presumption."

However, the facts which the court had before it were not the same as those in the instant case. There the record disclosed

both marriages, and the acknowledgment of the obligations of the first marriage by the deceased up and until only a few years before his death, while in the case at bar there is no credible evidence that tends to establish the claimed marriage of the deceased to the plaintiff.

It must be conceded also that the great weight of authority is contrary to this holding, even upon the facts that were then before the court.

In 18 Ruling Case Law 417, the rule is stated as follows:

"When a marriage has been consummated in accordance with the forms of law, it is presumed that no legal impediments existed to the parties entering into such marriage, and the fact, if shown, that either or both of the parties have been previously married, and that such wife or husband of the first marriage is still living, does not destroy the prima facie legality of the last marriage. The presumption in such a case is that the former marriage has been legally dissolved and the burden that it has not rests upon the party seeking to impeach the last marriage."

And in Jones' Commentaries on Evidence, 2nd Edition, paragraph 61, page 113, in considering this question, the following conclusion is reached:

"Whenever a marriage has been established there is a presumption in favor of its validity which is not overthrown by proof of a prior marriage, the presumption of innocence overcoming the presumption of the validity and continued existence of the prior marriage."

For the reasons as herein set forth, the judgment of the Probate Court is affirmed.

MORGAN, P. J., and LIEGHLEY, J., concur.