369 F.2d 604
 Mary DOMANY, Plaintiff-Appellee,
v.
OTIS ELEVATOR COMPANY, Defendant-Appellant.
Mary DOMANY, Plaintiff-Appellee,
v.
SEARS, ROEBUCK & COMPANY, Defendant-Appellant.
Andrew DOMANY, Plaintiff-Appellee,
v.
OTIS ELEVATOR COMPANY, Defendant-Appellant.
Andrew DOMANY, Plaintiff-Appellee,
v.
SEARS, ROEBUCK & COMPANY, Defendant-Appellant.
 Nos. 16638-16641.
 United States Court of Appeals Sixth Circuit.
 December 9, 1966.
 
 COPYRIGHT MATERIAL OMITTED Sumner Canary, Cleveland, Ohio, for appellant, Otis Elevator Co. Daniel C. Schipfer, Arter, Hadden, Wykoff & Van Duzer, Cleveland, Ohio, on the brief.
 Michael R. Gallagher, Cleveland, Ohio, for appellant, Sears, Roebuck & Co. John B. Robertson, Hauxhurst, Sharp, Cull & Kellogg, Cleveland, Ohio, on the brief.
 Edward I. Stillman, Cleveland, Ohio, for appellees. Sheehan, Cook, Miller & Stillman, Cleveland, Ohio, on the brief.
 Before O'SULLIVAN, Circuit Judge, CECIL, Senior Circuit Judge, and MATHES, Senior District Judge*.
 CECIL, Senior Circuit Judge.
 
 
 1
 Mary Domany and her alleged husband, Andrew Domany, plaintiffs-appellees herein, brought these actions against Sears, Roebuck & Company and Otis Elevator Company, defendants-appellants, hereinafter referred to as Sears and Otis, respectively, in the United States District Court for the Northern District of Ohio, Eastern Division. They recovered judgments in the amounts of $175,000 and $65,000, respectively. Sears and Otis each appealed.
 
 
 2
 Jurisdiction is invoked on the basis of diversity of citizenship. Section 1332, Title 28, U.S.C. Mary and Andrew Domany, hereinafter referred to as plaintiffs, are residents of Ohio. Sears is a corporation organized in New York with its principal place of business in Chicago, Illinois. Otis is a corporation organized in the state of New Jersey, with its principal place of business in New York City. The substantive law of Ohio is applicable. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188.
 
 
 3
 The plaintiffs' claims arise out of an injury to Mary Domany resulting from the abrupt stopping of an escalator in a Sears store located in the Southgate Shopping Center in Maple Heights, Ohio. On November 18, 1960, Mrs. Domany was descending from the second to the first floor of the Sears store when the escalator upon which she was riding came to a sudden stop. She fell several steps to the floor below. Mrs. Domany sustained a ruptured fascia of one of the muscles of her right thigh and a contusion in the same area. At the time of her fall, Mrs. Domany was assisted by a lady employee of the store. She was able to walk and on the advice of the store security officer, she was taken by her husband to Suburban Community Hospital. She was treated at the hospital and released the same day. The following day, she saw her own doctor. Her physical injury was healed in a month. Sometime after the accident Mrs. Domany went to a psychiatrist who testified that she suffered from traumatic neurosis as a result of her fall.
 
 
 4
 The escalator involved in the accident was purchased from, and installed by, Otis. The escalator was serviced and maintained by Otis under a contract with Sears which provided that its possession and management were exclusively in Sears. The pit or place where the escalator mechanism was housed, while not locked, was under the exclusive control of Otis. Pursuant to this contract, Otis inspected and serviced the escalator at the Sears' store every Monday morning. In addition, Otis would respond to calls from Sears for service. The last inspection prior to the accident was made by Otis on Monday, November 14th. The escalator was found to be functioning properly on this inspection. The only service that Sears, through its employees, performed in connection with the escalator was to start and stop it at the beginning and end of each day. In accordance with Ohio standards, there were emergency stop buttons at the top and bottom of the escalator. The apparent explanation for the stopping of the escalator is that some unauthorized person pressed the emergency stop button. Without calling Otis for service, an employee of Sears restarted the escalator after the accident. Otis found the escalator to be functioning properly, on the next scheduled inspection, the following Monday.
 
 
 5
 Plaintiff, Mary Domany, sought to recover damages for the injuries she sustained as a result of the accident. Her alleged husband, Andrew Domany, sued to recover expenses paid by him as a result of his wife's injuries and for damages for loss of consortium. Otis and Sears were sued jointly. The first cause of action of each plaintiff was based on res ipsa loquitur and the second one on negligence. The trial judge submitted the case to the jury on both causes of action.
 
 
 6
 Both Sears and Otis claim that the trial judge erred in not submitting the issue of contributory negligence of the plaintiff, Mary Domany, to the jury. The trial judge instructed the jury, "There being no proof that Mary Domany did anything improper while on the escalator, she is not guilty herself of any negligence * * *."
 
 
 7
 It is a fundamental rule of our jury system that where there is a question as to the existence of certain alleged facts, the function of determining such facts rests with the jury and not the court.
 
 
 8
 "(W)e note the established rule that in the face of a motion to direct the jury to return a verdict for one of the parties to an action, * * * the court must construe the evidence most strongly in favor of the party against whom the motion is made, and, where there is substantial competent evidence to support his side of the case, upon which reasonable minds may reach different conclusions, the motion must be denied. Neither the weight of the evidence nor the credibility of the witnesses is for the court's determination in disposing of such a motion." Durham v. Warner Elevator Mfg. Co., 166 Ohio St. 31, 36, 139 N.E.2d 10, 14. See also Hilleary v. Bromley, 146 Ohio St. 212, 64 N.E.2d 832; Botto v. Fischesser, 174 Ohio St. 322, 189 N.E.2d 127.
 
 
 9
 In considering the case most favorably to the party against whom the motion is made, the court is required to take into account any reasonable inferences that may be drawn from the facts in evidence. Purdy v. Kerentoff, 152 Ohio St. 391, 89 N.E.2d 565; Wilkeson v. Erskine & Son, 145 Ohio St. 218, 61 N.E.2d 201.
 
 
 10
 There was evidence that there were signs clearly visible at the approach to, and on, the escalator in question, cautioning passengers to hold the handrail. An elderly man who was below Mrs. Domany on the escalator walked off the escalator after it had stopped short and was not injured. There was testimony by those who performed tests on the escalator to the effect that by holding onto the handrails they were able to maintain their balance. While the plaintiff, Mary Domany, testified that she was holding onto the handrail at the time of the accident, the jury might well infer that she was not. As the trial judge said in his charge, "You are not required to believe the testimony of any witness simply because he or she was under oath. You may believe or disbelieve any witness wholly, or in part." Such an inference would be an immediate inference from the facts proven and would not be predicating one inference on another inference. The rule in Ohio was announced in McDougall v. Glenn Cartage Co., 169 Ohio St. 522, 2nd Syl., 160 N.E.2d 266, as follows:
 
 
 11
 "The only inferences of fact which the law recognizes are immediate inferences from facts proved, but a given state of facts may give rise to two or more inferences, and in such case one inference is not built upon another but each is drawn separately from the same facts."
 
 
 12
 The district judge was in error in failing to submit the issue of contributory negligence of the plaintiff, Mary Domany, to the jury.
 
 
 13
 One of the claims made by Sears on this appeal is that Andrew Domany was not the husband of plaintiff, Mary Domany. Sears claims that the trial judge erred in not directing a verdict in its favor on this issue or in the alternative in not submitting the question to the jury.
 
 
 14
 The plaintiffs entered into an alleged common law marriage in 1952. At this time, plaintiff, Andrew Domany, had a wife and three children living in Europe. He testified that he then believed that he was divorced from this wife. However, in 1953 he filed a suit for divorce in Cleveland, in which he alleged that he had a wife living in Europe. The wife in Europe filed an answer and contested the action. No divorce was granted. There was no further evidence that the European marriage was ever dissolved. On August 17, 1957, the plaintiffs had a ceremonial marriage in Angola, Indiana. The foundation of Mr. Domany's claims for expenses and damages for loss of consortium is that he was the lawful husband of plaintiff Mary Domany at the time of the accident. Without such a lawful relationship there can be no recovery by plaintiff Andrew Domany.
 
 
 15
 We cannot find from the record that counsel for Sears specifically raised the question of the validity of plaintiffs' marriage in the motion for a directed verdict at the close of plaintiffs' testimony or in the motion for a directed verdict at the close of all the testimony. Counsel did request before argument an instruction[1] in writing, to have the question submitted to the jury. The trial judge granted this request at the time it was presented and counsel claims to have argued the question to the jury. The only reference we find to the subject in the arguments is Mr. Gallagher's statement, "This was during a period when there was a mixed up marital status, and I don't care to get into that." The judge did not include the requested instruction in his general charge. He not only did not give the instruction but he assumed throughout the instruction that the plaintiffs were husband and wife. He said, "If you find the Defendants, either one or both of them, were negligent, and that such negligence was the proximate cause of Mary Domany's injuries, you will return a verdict in favor of Plaintiff Andrew Domany."
 
 
 16
 Counsel for Sears called the omission of the requested charge to the attention of the judge who said,
 
 
 17
 "I spent all Friday night and part of Saturday morning, and we finally got the pleading out, and you admitted it. My conclusion is you not only did not affirmatively defend on it, but you admitted it. It may have been a mistake in the way you worded your answers. It looks like it, but the ultimate result is you don't deny it."
 
 
 18
 We think the trial Judge might very well have concluded that counsel had abandoned the issue when he did not argue it to the jury. Under these circumstances he was justified in not giving the charge. However, after granting the instruction the trial judge should have advised counsel of his reasons, when he decided not to give it.
 
 
 19
 Counsel for Sears did raise the question on motion for judgment notwithstanding the verdict or for a new trial. Error was claimed for failing to give request to charge No. 14, the instruction in question. In denying the motion, the trial judge said on this point,
 
 
 20
 "The defendants also claim the Court erred in refusing to charge the jury on the issue of whether Andrew Domany was lawfully the husband of Mary Domany. The basis for the claim was the admission by Andrew Domany that he filed for a divorce in 1953 but withdrew his petition when his wife, then living in Europe, contested the divorce action. However, Andrew Domany testified that his European wife obtained a divorce and that, upon receiving a letter notifying him of the divorce, he married Mary Domany in a formal ceremony on August 17, 1957.
 
 
 21
 "Concerning the validity as between prior and subsequent marriages, the majority view is to the effect that the presumption of validity of the subsequent marriage overcomes the presumption of continuance of the previous marriage.
 
 
 22
 "While Ohio follows an opposite rule when the question arises between the spouses of the different marriages, it would seem that Ohio would follow the majority rule should the question arise as against third parties. See 35 O.Jur. 2d, Marriages, Section 71. In a case such as this one, wisdom and fairness demand that the second marriage be presumed valid. There was no evidence to show that Andrew Domany was not divorced from his European wife. Upon the evidence in this case, the Court did not err in refusing to charge the jury on the issue as to whether Andrew Domany was the husband of Mary Domany.
 
 
 23
 "The plaintiff Andrew Domany in case No. C 62-881 alleged in his complaint that `The plaintiff, Andrew Domany, is now and was at all times hereinafter mentioned the husband of Mary Domany.' The defendants filed separate answers in which, for want of knowledge, they denied this allegation of the plaintiff. Upon this state of the pleadings the defendants offered no evidence except the cross-examination of the plaintiff Andrew Domany. The cross-examination affirmatively established his marriage to Mary Domany, and without any other evidence to the contrary there was no issue to be submitted to the jury."
 
 
 24
 While we do not find that the trial judge erred in refusing to give requested instruction No. 14, we cannot agree with the statement of facts and law in his memorandum denying Sears' motion for judgment notwithstanding the verdict.
 
 
 25
 We have examined all the evidence[2] on the subject of the plaintiffs' marriage and we do not find that Andrew Domany testified that his European wife obtained a divorce and that he received a letter notifying him of the divorce. He did testify that he married Mary Domany in a formal ceremony on August 17, 1957. But this does not dispose of his first marriage. In his statement in the general charge, the judge said that the marriage was admitted and that Sears did not defend on it affirmatively. The pleadings as referred to by the judge in the portion of the opinion above quoted raise the issue. Andrew Domany in his amended complaint alleged that he was at all times the husband of Mary Domany, and Sears in its answer, for want of knowledge, denied it. We find nothing in the record admitting a valid marriage.
 
 
 26
 We think, under Ohio law, the issue was further raised by the evidence. Andrew Domany testified that he had a wife in Europe. He brought an action for a divorce. No divorce was granted. There is no further evidence concerning a divorce from the European wife. Under Ohio law that marriage is presumed to continue until proof of its termination.
 
 
 27
 In the event this issue is raised in a retrial of the case, we discuss the Ohio law on the subject of subsequent marriages where there is a prior undissolved marriage.
 
 
 28
 There are two presumptions in law concerning the marital status of individuals. The rule followed in the majority of jurisdictions is that a marriage is presumed to be legal until proven otherwise. A corollary to this is the additional presumption that the first marriage has ended in a legal divorce. Under the minority rule which is followed in Ohio, it is presumed that once a marriage is entered into it continues until proof of dissolution. To complement this presumption, it is further presumed that there was no valid divorce in the first marriage in the absence of positive proof. In re Clark's Estate, Ohio App., 128 N.E. 2d 437, 69 Ohio Law Abst. 435; Industrial Comm. of Ohio v. Dell, 104 Ohio St. 389, 135 N.E. 669, 34 A.L.R. 422; Evans v. Industrial Comm., 166 Ohio St. 413, 143 N.E.2d 705; Dibble v. Dibble, Admx., 88 Ohio App. 490, 100 N.E.2d 451; Evans v. Reynolds, 32 Ohio St. 163.
 
 
 29
 A conflict arises between these two presumptions when, as in this case, a spouse of a first marriage enters into a second marriage, while the first spouse is still living, and no evidence is presented as to the dissolution of the first marriage. Under the majority rule, the legality of the subsequent marriage would be presumed, in spite of the fact that a spouse of the former marriage was still living. In Ohio, under the minority rule, it would be presumed that the status of the parties to the first marriage continued and the burden would be upon the parties claiming the validity of the second marriage to overcome the presumption. Evans v. Reynolds, supra, was an early Ohio case on the subject. There the defendant "married" the deceased at a time when she had a husband living in England. She claimed that this first marriage was void under the laws of Great Britain, but she offered no evidence to substantiate her claim. The court held, at p. 165,
 
 
 30
 "But that marriage (the first one) must be presumed to be lawful till some enactment which annuls it is produced and proved by those who deny its lawfulness."
 
 
 31
 The district judge said, in his memorandum quoted above, "it would seem that Ohio would follow the majority rule should the question arise as to third parties. See 35 O.Jur.2d, Marriages, Section 71. * * * There was no evidence to show that Andrew Domany, was not divorced from his European wife." The cases cited by Ohio Jurisprudence do not support the statement of the text, nor have we found any in Ohio that do. In Machransky v. Machransky, 31 Ohio App. 482, 166 N.E. 423, the court recognized the validity of a Jewish divorce obtained in Russia, and therefore there was no legal impediment to the second marriage. In Olijan v. Lublin, Ohio App., 50 N.E.2d 264, 38 Ohio Law Abst. 393, affirmed, 143 Ohio St. 417, 55 N.E.2d 658, the court merely commented that Ohio followed the minority approach, after stating that such rule was inapplicable in the given case because there was no valid marriage between the deceased and the alleged first wife. Furthermore, in Evans v. Industrial Comm., supra, the court applied the Ohio rule that favors the validity of the first marriage, in a case in which there was no indication of a competing claim by the first wife.
 
 
 32
 The attempted distinction on the ground that Ohio would follow a different rule where a third party is the contestant is not valid. Just what is meant by third party is not clear. In Evans v. Reynolds, supra, the contestants were collateral heirs, next of kin, of Morgan Reynolds, deceased. It would seem that they were third parties as distinguished from parties to the marriage. In Evans v. Industrial Comm. cited above, the Commission refused to pay wives on the ground of prior undissolved marriages. The Commission was a third party as far as the marriages were concerned. There were two cases. In one the wife had a prior marriage and in the other the deceased husband had a prior marriage. In neither case was there any evidence of a dissolution of the marriage. The district judge stated the proposition in reverse when he said, "There was no evidence to show that Andrew Domany was not divorced from his European wife." The proposition, under Ohio law, should have been that there was no evidence that a divorce was obtained from the European wife either prior to or after the second marriage.
 
 
 33
 The Federal District Court is bound to follow the Ohio rule that places the burden of proving the dissolution of the first marriage on the party asserting the validity of the second marriage. In this case that burden is on Andrew Domany once the issue is raised as to the validity of his marriage to Mary Domany. With the burden being on Andrew Domany, Sears was not required to affirmatively defend by way of offering evidence. It appears to us that there was sufficient question about the validity of Andrew Domany's marriage to Mary to put him on proof of the dissolution of his first marriage. If that first marriage was terminated by divorce or otherwise, he should have no difficulty in establishing that fact. In the interest of justice, the appellants should not be exposed to a $65,000 judgment by a plaintiff whose right to recover is based on a valid marriage to Mary Domany, absent proof of the termination of his prior valid marriage to a wife now living in Europe.
 
 
 34
 In a retrial of this case, if counsel desire to pursue this issue it should be clearly presented and the trial judge should follow the Ohio rule as here outlined.
 
 
 35
 Since this case will be remanded for retrial, we proceed to discuss other questions which will necessarily be involved in another trial. Otis claims that a verdict should have been directed for it, since its only connection with either Sears or the escalator was its contract with Sears to service the escalator.
 
 
 36
 Ohio no longer requires privity of contract between a manufacturer and a consumer in order to hold the manufacturer liable for negligence in manufacture. Thrash v. U-Drive-It Co., 158 Ohio St. 465, 110 N.E.2d 419; Witherspoon v. Haft, 157 Ohio St. 474, 106 N.E.2d 296. In 1956, the Supreme Court of Ohio abrogated the rule of privity with reference to maintenance contracts.
 
 
 37
 "* * * where one, for a consideration, undertakes to provide an inspection or examination service for the mechanical equipment owned or controlled by another, the former is thereby charged with the duty of performing those services in a reasonably proper and efficient manner, and, if such duty is negligently or carelessly performed whereby injury occurs to a blameless person lawfully using such equipment, such injured person has a right of action directly against the offending contractor. Liability in such instance is not dependent upon any contractual relation between the person injured and the contractor but on the failure of the contractor to exercise due care in the performance of his obligation." Durham v. Warner Elevator Mfg. Co., supra, 166 Ohio St. p. 37, 139 N.E.2d p. 15. See also, Dickerson v. Shepard Warner Elevator Co., 287 F.2d 255 (C.A.6).
 
 
 38
 Under this rule Otis can be held liable to the plaintiffs for any acts of negligence on its part proximately causing injury to the plaintiffs. In the second cause of action, the plaintiffs charge Otis with acts of negligence which relate to maintenance and service of the escalator, particularly permitting the escalator to be in such condition as to cause it to stop suddenly. There was conflicting testimony with reference to safe stopping distances for escalators. This was under the management and control of Otis and was a proper question to be submitted to the jury.
 
 
 39
 We come now to the question of res ipsa loquitur. Both Sears and Otis claim that the court erred in submitting the case to the jury on res ipsa loquitur.
 
 
 40
 Otis and Sears both agree on the requirements of the doctrine of res ipsa loquitur but each denies that it is applicable to the facts of this case as related to it. In Ohio, res ipsa loquitur is a rule of evidence which permits, but does not require the jury to infer negligence in certain situations. It does not shift the burden of proof to the defendant, and the plaintiff is not entitled to a directed verdict in his favor if the defendant presents no rebuttal evidence. There are two prerequisites for the application of the doctrine. The instrumentality causing the injury must be under the "exclusive management and control" of the defendant, and the accident must be one that would not ordinarily occur except in the absence of due care. Fink v. N. Y. C. Rd. Co., 144 Ohio St. 1, 56 N.E.2d 456.
 
 
 41
 Otis argues that under the rule of Durham the necessary negligence that must be proved cannot be based on the doctrine of res ipsa loquitur. In support of this claim two cases are cited. Parise v. Otis Elevator Co., 100 Ohio App. 200, 136 N.E.2d 113; McDonald v. Haughton Elevator & Machine Co., 60 Ohio App. 185, 20 N.E.2d 253. In these cases the doctrine was not applied for the reason that it was held that the elevators were not within the exclusive management of the defendant maintenance companies. These cases can be distinguished from the case at bar on the basis that the owners made their own adjustments to the elevators.
 
 
 42
 Otis argues that no showing was made that this accident would not have occurred except in the absence of due care. This argument is based upon evidence which tended to demonstrate that someone pushed one of the stop buttons located at either end of the escalator. Claiming that this was the specific cause of the stoppage, or that it was, therefore, equally inferable that the accident was caused by someone other than the defendant, Otis argues that res ipsa loquitur is inapplicable. Loomis v. Toledo Rys. & L. Co., 107 Ohio St. 161, 140 N.E. 639; Glowacki v. Northwestern Ry. & P. Co., 116 Ohio St. 451, 157 N.E. 21, 53 A.L.R. 1486; Price v. Dot's Super Market, Inc., 177 Ohio St. 122, 203 N.E.2d 113. However, the question involved is more than one of determining why the escalator stopped, but it is determining why the escalator stopped with such abruptness as to cause plaintiff to lose her balance. Otis' argument fails to meet this point. Furthermore, if the jury could initially draw a valid inference of negligence, the court should not be permitted to determine that the explanation offered by a defendant, as a matter of law, exonerates him from fault. The inference of negligence remains. Fink v. N. Y. C. Rd. Co., supra; Weller, Exrx. v. Worstall, 129 Ohio St. 596, 196 N.E. 637; Glowacki v. North Western Ry. & P. Co., supra. The plaintiff is not required to exclude all possible causes of the accident. Nanashe v. Lem Mon, Ohio App., 162 N.E.2d 569, 82 Ohio Law Abst. 97. Viewing the evidence most favorably to the plaintiff, as the court must do in determining whether res ipsa loquitur applies, (Howard v. Pennsylvania Rd. Co., 43 Ohio App. 96, 182 N.E. 663,) the court correctly held that the jury could reasonably infer that it was probable that the accident would not have occurred if due care had been exercised.
 
 
 43
 Sears and Otis each claim that the other had exclusive control of the escalator, so that the court erred in applying res ipsa to each, and Otis further claims that the doctrine is not applicable where two defendants are being sued.
 
 
 44
 When two or more defendants have adverse interests, such that the action of one breaks the chain of causation which links the other defendants to the accident, res ipsa loquitur has not been applied. Huggins v. John Morrell and Co., 176 Ohio St. 171, 198 N.E.2d 448; Price v. Dot's Super Market, Inc., supra; Parise v. Otis Elevator Co., supra; McDonald v. Haughton Elevator & Machine Co., supra. But where the possession and control is joint, Ohio has recognized that the doctrine may apply, citing with approval the following quote from Joffre v. Canada Dry Ginger Ale, Inc., 222 Md. 1, 158 A.2d 631.
 
 
 45
 "`* * * generally it has been held that res ipsa is not applicable against multiple defendants where it is not shown that their liability was joint or that they were in joint or exclusive control of the injury producing factor, * * *'" Huggins v. John Morrell and Co., supra.
 
 
 46
 Consequently, by establishing joint control, the trial court was correct in applying res ipsa to both defendants.
 
 
 47
 As a passenger on the escalator, a common carrier, Sears, as owner, owed plaintiff the "highest degree of care of which the situation was reasonably susceptible." May Dept. Stores Co. v. McBride, 124 Ohio St. 264, 178 N.E. 12; Welch v. Rollman & Sons Co., 70 Ohio App. 515, 44 N.E.2d 726. To permit Sears, while owing the highest duty of care toward plaintiff, to shift its responsibility to a maintenance contractor, would allow persons to contract away a duty imposed upon them by law.
 
 
 48
 "One who expressly or by implication invites others to come upon his premises must exercise ordinary care to guard them against danger, and to that end he must exercise ordinary care to render the premises reasonably safe for the invitees; he cannot delegate this duty to an independent contractor." 28 Ohio Jurisprudence 2d 371, Independent Contractors, Sec. 27. (Emphasis added.)
 
 
 49
 Accord, Richman Bros. Co. v. Miller, 131 Ohio St. 424, 3 N.E.2d 360; Cincinnati & S. Bell Tel. Co. v. Eadler, 75 Ohio App. 258, 61 N.E.2d 795. Being unable to delegate its duty, Sears and Otis must be considered in joint control and management of the escalator. In the alternative, if Otis be found to have exclusive management and control, its negligence would be attributable to Sears.
 
 
 50
 In considering whether res ipsa loquitur is applicable, practical considerations of management and control, not possession, are determinative. Schafer v. Wells, 171 Ohio St. 506, 172 N.E.2d 708. It is not necessary that the defendants have continuing control and management, but merely that there be no intervening control and that the defendant have the right to exercise such control. The question to be determined is whether it was probable that the defendant was responsible for the negligence connected with it. Schafer v. Wells, supra. Inasmuch as Sears only started and stopped the escalator, whereas Otis installed it, performed all the maintenance and servicing, inspected it weekly to check its operational efficiency, and was, therefore, in a position to discover any defect, it was proper to hold that Otis had control and management of the escalator.
 
 
 51
 Therefore, being the type of accident that would not occur in the absence of due care, the court was correct in applying the doctrine of res ipsa loquitur to both Sears and Otis, either upon the theory of joint control, or upon the theory that Otis was in control and its negligence was attributable to Sears, because Sears owed a non-delegable duty to the plaintiff.
 
 
 52
 Sears claims that it was error to submit the case to the jury on both res ipsa loquitur and specific negligence. The Ohio Supreme Court, in disapproving a dictum rendered in Winslow v. Ohio Bus Line Co., 148 Ohio St. 101, 73 N.E.2d 504,[3] aligned itself with the majority of American jurisdictions, by stating:
 
 
 53
 "In our opinion, if the allegations of the petition and the proof in support thereof call for its application, the doctrine of res ipsa loqitur should be applied even though the petition alleges also and evidence is offered to prove specific acts of negligence." Oberlin v. Friedman, 5 Ohio St. 2d 1, 213 N.E. 2d 168.
 
 
 54
 Consequently, the trial judge did not err in submitting the case to the jury on the doctrine of res ipsa loquitur and specific negligence against both Otis and Sears.
 
 
 55
 The judgment of the District Court is reversed and the case is remanded for a new trial.
 
 
 
 Notes:
 
 
 *
 William C. Mathes, Senior District Judge, Southern District of California, sitting by designation
 
 
 [1]
 "You are instructed that before the plaintiff, Andrew Domany, may recover damages for the medical and hospital expenses in connection with the care of Mary Domany, or for the loss of her services, society and companionship or any expenses reasonably appurtenant to such loss, he must first establish by a preponderance of the evidence that Mary Domany was his lawful spouse at the time such expenses were incurred or such loss suffered." (Sears requested instruction No. 14.)
 
 
 [2]
 "Q At the time you began to live with Mrs. Domany in February, 1952 were you then divorced from your wife in Europe?
 "A I was divorced because my wife — my ex-wife, she in Czechoslovakia — give to the court —
 "Q Did you believe you were then divorced?
 "A Yeah.
 "Q I see. Then is it the fact, Mr. Domany, that you filed for divorce here in Cleveland in 1953, a year after?
 "A Yes.
 "Q Yes, and is it the fact that your wife in Europe filed an answer and contested the divorce?
 "A (No response).
 "Q May I just have an answer to it? Did she file an answer to that petition for a divorce contesting it, sir?
 "THE COURT: Do you understand what he means?
 "THE WITNESS: No, I don't understand.
 "Q I see. Did you get a divorce from her in 1953, at that time, from your wife in Europe?
 "A No.
 "Q You did not. All right. Now, did you have three children living in Europe from your first marriage?
 "A Yes.
 
 
 [3]
 "The doctrine ofres ipsa loquitur is not applicable in a case where the petition and proof disclose that plaintiff had knowledge of the facts and circumstances showing the claimed negligence of defendant." First syllabus.