**Robert BOERNER, Plaintiff,**

v.

**LIBERTY MUTUAL INSURANCE COMPANY, Defendant.**

No. C-3-87-136.

United States District Court, S.D. Ohio, W.D.

Jan. 25, 1989.

Supplemental Opinion Jan. 30, 1989.

---

James D. Dennis, Dayton, Ohio, for plaintiff.

W. Locke McKenzie, Jr., Columbus, Ohio, for defendant.

ENTRY SETTING FORTH THE COURT'S RATIONALE FOR ITS DECISION OVERRULING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. # 8) (DOC. # 38)

RICE, District Judge.

On April 11, 1988, this Court entered its Decision in this case overruling the Motion of the Defendant Liberty Mutual Insurance Company for Summary Judgment. (Doc. # 38). The Court will now briefly set forth the reasons for its decision that Plaintiff has alleged facts which if proven at trial might allow Plaintiff to recover on *one* of his theories of liability, such that Defendant is not entitled to summary judgment

as a matter of law, without submission of the case to the trier of fact.

In its decision on Defendant's Motion for Summary Judgment, this Court held, "Construing the evidence most strongly in favor of Plaintiff Boerner, this Court finds no genuine issue as to Plaintiff's theory that Defendant may be held liable on a theory of *res ipsa loquitur* and that, therefore, Plaintiff's theory of liability based on *res ipsa loquitur* must fail." (Doc. # 38, pp. 1–2).

■ Under Ohio law, the doctrine of *res ipsa loquitur* provides "a rule of evidence which allows the trier of fact to draw an inference of negligence from the facts presented." *Morgan v. Children's Hospital*, 18 Ohio St.3d 185, 480 N.E.2d 464, 465 (1985). The Ohio Supreme Court has explained:

> The doctrine of *res ipsa loquitur* is not a substantive rule of law furnishing an independent ground for recovery; rather, it is an evidentiary rule which permits, but does not require, the jury to draw an inference of negligence when the logical premises or the inferences are demonstrated.

*Jennings Buick, Inc. v. City of Cincinnati*, 63 Ohio St.2d 167, 406 N.E.2d 1385, 1387 (1980). In order to invoke *res ipsa loquitur*, the Plaintiff must demonstrate:

(1) That the instrumentality causing the injury was, at the time of the injury, or at the time of the creation of the condition causing the injury, under the exclusive management and control of the defendant; and

(2) That the injury occurred under such circumstances that in the ordinary course of events it would not have occurred if ordinary care had been observed.

*Hake v. George Wiedemann Brewing Company*, 23 Ohio St.2d 65, 262 N.E.2d 703, 705 (1970). *Res ipsa loquitur* has been applied in a case involving an elevator accident where it was shown that the elevator was being operated in its usual and intended manner and where the elevator was under the exclusive management and control of the defendant, allowing the infer-ence that the accident "was due to some defect in construction of the elevator, or to lack of care in its maintenance." *Class v. YWCA*, 47 Ohio App. 128, 133, 191 N.E. 102 (1934). A further permissible inference was that "[a] defect in an elevator, rendering it uncontrollable, does not ordinarily arise if the defendant uses that degree of care in its inspection which may reasonably be expected" under the circumstances. *Class* at 133, 191 N.E. 102, quoting *Gage v. Waldorf Astoria Hotel Company*, 90 Misc. 331, 152 N.Y.S. 1019 (1915).

The case at bar is somewhat different from *Class* in that there is here a question as to whether the elevator was being operated in an intended manner (Doc. # 8, p. 17); however, there is also a far more significant difference. There was a contract between Plaintiff's employer, Standard Register, and Gem City Elevator Company providing, *inter alia*, for Gem City to perform regular monthly inspections and to maintain and service the elevator. (Doc. # 8, p. 3). Thus, even if it could be inferred that the accident must have arisen either because of the defect in the elevator which should have been discovered through an inspection performed with due care or because of the lack of due care in maintenance, it cannot be inferred that the accident must have arisen as a result of the negligence of Defendant Liberty Mutual. Defendant had no responsibility for maintenance, regardless of whether Defendant had control or a duty regarding inspection for defects.

Plaintiff cites *Domany v. Otis Elevator Co.*, 369 F.2d 604 (6th Cir.1966), for the proposition that *res ipsa loquitur* may be applied where control over the accident-producing instrumentality is shared (Doc. # 13, p. 30). In *Domany*, the Sixth Circuit held that Ohio law permitted the application of *res ipsa loquitur* jointly against the owner and the servicer of an escalator on the grounds that either there was an agency relationship between the two defendants for purposes of due care and inspection and maintenance of the escalator or the two defendants had joint control over the escalator, established by contract. *Domany* at

613–614. In this case, there is no relationship between Defendant Liberty Mutual and Gem City Elevator Company, which is not currently a party to this case.

The *Domany* court explained:

In considering whether res ipsa loquitur is applicable, practical considerations of management and control, not possession, are determinative.... It is not necessary that the defendants have continuing control and management, but merely that there be no intervening control and that the defendant have the right to exercise such control. The question to be determined is whether it was probable that the defendant was responsible for the negligence connected with it.

*Domany* at 614 (citations omitted). In this case, the last inspection by Defendant Liberty Mutual had been performed three months before the accident (Doc. # 8, p. 18). In the period intervening between that inspection and the accident, all management and control over operation and maintenance of the elevator were exercised by parties other than the Defendant herein. The undisputed facts of this case simply do not permit the application of *res ipsa loquitur* to establish an inference that it must have been some negligent act of this Defendant that caused the accident.

■ Alternatively, Plaintiff claims that Defendant Liberty Mutual is liable for injuries to Plaintiff caused by the elevator accident as a result of the alleged negligence of Defendant's employee Clark Slusher in an inspection of the elevator performed pursuant to a contract, agreement, or other arrangement with the state of Ohio, Department of Industrial Relations, Division of Elevator Inspection (Doc. # 1, Amended Complaint, ¶¶ 3 and 4). Section 4105.10 of the Ohio Revised Code requires that elevators be inspected once every six months. The inspections may be performed either by general inspectors (O.R.C. § 4105.08) or by authorized special inspectors, who are employees of elevator insurance companies (O.R.C. §§ 4105.04 and 4105.07). It is undisputed that at the time of the accident the inspections of Defendant's employee Clark Slusher served to meet the require-

ment imposed on Plaintiff's employer Standard Register that its elevator be inspected every six months pursuant to O.R.C. § 4105.10 (Doc. # 8, p. 4).

It is settled Ohio law that misfeasance or nonfeasance on the part of special inspectors in their performance of statutory duties constitutes "misfeasance or nonfeasance in office, and a violation of the duty ... owed to the state and not a private duty." *Taylor v. Casualty Co.*, 75 Ohio App. 299, 304, 61 N.E.2d 919 (1945) (construing General Code § 1038–10, the predecessor to O.R.C. § 4105.07); *see also Sawicki v. Village of Ottawa Hills*, 37 Ohio St.3d 222, 525 N.E.2d 468, 477 (1988). Courts have reasoned that the general public so benefits from the state's establishment of standards for safety and inspection of such instrumentalities as elevators, that public policy does not require that the establishment of such standard be accompanied by the creation of a private cause of action for negligence for an individual injured in an accident which might have been prevented by a sufficiently thorough inspection. *See Shelton v. Industrial Commission*, 51 Ohio App.2d 125, 367 N.E.2d 51, 54 (1976). Thus, where no private cause of action has been created by statute, Plaintiff herein has no individual cause of action against Defendant Liberty Mutual arising out of negligence by an employee of Defendant in the performance of a statutory inspection.

■ Additionally, Plaintiff claims that Defendant Liberty Mutual is liable for injuries which he suffered as a result of the elevator accident on the basis of Defendant's alleged breach of a duty to inspect the elevator assumed by Defendant pursuant to a contract, agreement or other arrangement with Standard Register (Doc. # 1, Amended Complaint, ¶¶ 3 and 4). Plaintiff asserts that the insurance policy issued by Defendant to Standard Register included a premium charge for inspections of the elevator (Doc. # 21, p. 2; Doc. # 13, p. 22), from which it could be inferred that Defendant assumed a duty to inspect pursuant to contract. This Court concludes that the only way the insurance policy ex-

tension schedule to which Plaintiff refers is comprehensible, is through a vertical reading of the final column, indicating that there is no premium charge for elevator inspection, and the Court further concludes that no reasonable jury could find otherwise. It is undisputed that although the insurer maintains the right to inspect, the contract expressly eschews any obligation of the insurer to inspect. (Doc. # 8, p. 4). Thus, there is no *genuine* issue of material fact as to Plaintiff's claim that Defendant breached a duty imposed by contract, and as a matter of law, Plaintiff cannot recover on that claim. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ Finally, Plaintiff asserts that even if no duty to inspect was imposed upon Defendant by statute or by contract, Defendant assumed a duty of due care once inspections were undertaken (Doc. # 13, p. 13). Under the so-called "voluntary duty" doctrine, Ohio courts have held "that once a duty is undertaken voluntarily, it must be performed with ordinary care." *Sawicki v. Village of Ottawa Hills*, 37 Ohio St.3d 222, 525 N.E.2d 468, 474 (1988); *Seley v. Searle*, 67 Ohio St.2d 192, 423 N.E.2d 831, 839 (1981); *Briere v. Lathrop*, 22 Ohio St.2d 166, 258 N.E.2d 597, 602 (1970). The scope of the duty is limited to that actually undertaken. *Sawicki*, 525 N.E.2d at 474. In the case at bar, the parties dispute the scope, import, and intent of the inspections undertaken.

There is evidence that the purpose of the inspections performed by Defendant was broader than the mere provision of an employee to perform the inspections statutorily required of Plaintiff's employer, Standard Register, for its elevators and that the inspections were part of a Defendant loss prevention control program (Doc. # 13, p. 7; Doc. # 8, p. 14).

Defendant argues that the sole purpose of such inspections was to protect its shareholders and that any duty arising from the performance of the inspections could run only to the shareholders (Doc. # 8, p. 14). This argument might be well taken if the facts demonstrated that the inspections were carried out only on an irregular basis, such that Plaintiff could neither expect nor rely on their performance, or particularly if the inspections were used only to make adjustments in the premiums charged to Standard Register on its insurance policy according to the condition of the elevators. Such is not the case here.

It is undisputed that the inspections had been performed on a regular basis for at least seven years (Doc. # 8, p. 6), and there is some evidence that the inspections were regarded by Defendant as providing a service for the benefit of Plaintiff's employer (Halper deposition, Tr. 21). It is undisputed that Defendant's inspector discussed and made a written report of his findings and recommendations to Plaintiff's employer (Doc. # 8, p. 6; Slusher deposition, Tr. 29–30).

Defendant argues that any benefit to Plaintiff's employer and to Plaintiff resulting from the undertaking of the inspections was merely incidental, such that no duty to Plaintiff's employer or to Plaintiff could arise (Doc. # 8, p. 7). In *Barrow v. Lally*, the court held that where a defendant employer enacted rules to prevent the consumption of alcohol in the workplace in order to avert illness or accident in the workplace which might give rise to liability on worker's compensation, any benefit to those outside the workplace was purely incidental, such that when the defendant failed to enforce the rules so as to prevent an employee from leaving the workplace under the influence of alcohol and causing an automobile accident, an injured plaintiff had no cause of action against the employer. *Barrow v. Lally*, 8th Appellate District, Cuyahoga County Case Nos. 51503, 51524, 1987 WL5459 (January 15, 1987).

In the case at bar, the relationship between the undertaking of the inspections by Defendant and the benefit rendered to Plaintiff is much more direct. The means employed by Defendant to protect its shareholders was to reduce the risk of injury to—that is, to protect—the users of the Standard Register freight elevator, employees such as Plaintiff. The benefit to Plain-

tiff is not incidental, but essential to this expressed purpose of the undertaking.

The policy considerations regarding a private party's voluntarily undertaking inspections differ from policy considerations regarding the state's establishment of standardized inspections, at least in part because of the nature of the relationship of the parties. The relationship between an insurer such as Defendant and the insured is of a voluntary, commercial nature which arises through arms length negotiation, and within which the parties may bargain for the assignment of risks and costs. The relationship is defined and may be freely modified by contract or a course of dealing, to suit the needs of the parties according to the nature of their business. Furthermore, the Defendant insured is in the business of assessing and assigning economic value to risks.

Finally, under Ohio law, the imposition of liability for negligence in a voluntarily assumed duty to inspect does not lead to the result which has so concerned courts in other jurisdictions:

> the imposition of full responsibility for all losses that might have been revealed by the most complete inspection, even though no one concerned relied upon the insurance company for complete inspection.

*Gerace v. Liberty Mutual Insurance Co.,* 264 F.Supp. 95, 98 (D.D.C.1966), quoting Schaefer, J., *Nelson v. Union Wire Rope Corp.,* 31 Ill.2d 69, 199 N.E.2d 769 (1964). Ohio law simply does not impose liability so broadly based on duty voluntarily assumed.

Plaintiff argues, correctly, that a gratuitous act, once undertaken must be completed with due care (Doc. # 13, p. 13). See *Briere,* 258 N.E.2d at 602. The issue becomes what the bounds are of the act that was undertaken. *Sawicki,* 525 N.E.2d at 474. By imposing liability for voluntarily assumed duties, Ohio law does not discourage the undertaking of specific voluntary conduct, such as inspections, so much as it seeks to ensure that parties determine their conduct according to a fair understanding of the responsibilities imposed by their relationship, as defined by their agreements *and* past dealings. Because any duty owed by Defendant to Plaintiff arose from a course of conduct by Defendant, rather than from contractual agreement, the scope of the duty assumed must be defined by the course of conduct, within the requirements of due care. *Sawicki,* 525 N.E.2d at 474.

Defendant has alleged facts which suggest that Defendant may have undertaken a duty only to warn or make recommendations rather than to implement or enforce specific changes or repairs based on its inspections. (Doc. # 8, p. 7). It is undisputed that Defendant never performed certain kinds of tests or inspections and that these tests or inspections were in fact performed by Gem City Elevator Company pursuant to contract with Plaintiff's employer Standard Register (Doc. # 8, p. 3). It could not be said that Defendant assumed any duty with respect to these kinds of tests or inspections. Similarly, Defendant would assume no duty for tests or inspections which it disclosed (or were otherwise known) to Plaintiff's employer as not having been performed. See Prosser, Law of Torts, § 56, p. 348 (4th Ed.1971). The extent of tests or inspections which were actually performed, or which should have been performed in the exercise of due care under the circumstances, cannot be determined in the case at bar at this juncture. The scope of any duty of inspection owed to Plaintiff can be defined only by facts which will be determined by the jury.

Thus, this Court has found that, as a matter of law, Plaintiff cannot recover from Defendant for injuries received by Plaintiff in the elevator accident on a theory of *res ipsa loquitur,* on a claim of an alleged breach of duty in a statutory inspection, or on a claim of an alleged breach of a duty of inspection imposed by contract through the insurance policy, but that (in addition to questions of the existence of negligence and proximate cause, not addressed on this motion) there remains a genuine issue of material fact as to whether Defendant voluntarily assumed a duty of inspection owed to Plaintiff by undertaking regular inspections of the elevator used

by Plaintiff in his employment, and, if such duty was assumed, as to the scope of that duty. (Doc. # 38).

## ENTRY SUPPLEMENTING THE COURT'S ENTRY OF JANUARY 25, 1989 (DOC. # 45)

On January 25, 1989, this Court filed an Entry (Doc. # 45) setting forth the rationale for its Decision (Doc. # 38) on Defendant's Motion for Summary Judgment (Doc. # 8). The January 25, 1989 entry is hereby supplemented to include the discussion set forth below addressing the disclaimer of liability by Defendant for inspections performed pursuant to the right of inspection reserved by Defendant in the insurance policy with Plaintiff's employer Standard Register.

■ The Court concurs with Defendant's arguments that the contract establishes no duty of inspection and that the contract establishes that no liability to Defendant would attach from the performance of inspections arising solely from and within the right of inspection reserved by Defendant in the contract. The issue becomes whether the inspections actually performed fell within what was contemplated by the contractual "right of inspection," in which case no liability would attach, or whether the number, regularity, and scope of the inspections so exceeded what was contemplated by a mere "right of inspection" that their performance independently (independent of contract) gave rise to an assumed duty owed to Plaintiff's employer and to Plaintiff, governed not by the contract but by common law.[1]

On a Motion for Summary Judgment on the present state of the record, however, construing all facts and inferences therefrom in favor of the Plaintiff, this Court must find that a question of material fact

remains as to whether the series of regularly scheduled inspections and reports of recommendations, carried out for at least seven years, reflected a voluntarily undertaken course of conduct which constituted a service to Plaintiff's employer and to Plaintiff which was not contemplated by the contractual reservation of a "right of inspection," but which developed as a separately and independently assumed duty, upon which Defendant might be held legally responsible for injuries proximately caused by negligence in the performance of the duty assumed. The Court concludes that questions as to (1) whether or not Defendant, through its conduct, voluntarily assumed a duty of inspection owed to Plaintiff's employer and to Plaintiff, not contemplated by the language of the contract, (2) the scope of any duty so assumed, and (3) the existence of negligence and proximate cause depend on facts which remain to be determined at trial.

---

[1]. For example, if the inspections actually performed by Defendant had taken place only on an irregular basis, which was not the case, or if all tests, inspections, and reports necessary, within the exercise of due care, to ensure the safe operation of the elevator, were being performed by a party or parties other than Defendant, such that Defendant's inspections could provide no real service or additional benefit to Plaintiff's employer or to Plaintiff—and the facts alleged so far neither support nor undermine a conclusion that this was the case, this Court might be able to find that the inspections fell within what was contemplated by the contract as opposed to a voluntarily assumed duty and that, pursuant to the contract, no liability could attach for negligence in their performance, as a matter of law.