**GATTERDAM, Plaintiff-Appellee, v. GATTERDAM, Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 4242.   Decided February 28, 1949.

J. Paul McNamara, R. A. Hawley, Columbus, for plaintiff-appellee.

Peter Albietz, John M. Scott, Columbus, for defendant-appellant.

## OPINION

By HORNBECK, J.

The appeal is from a decree of divorce granted to the plaintiff from the defendant. Errors are not specifically assigned but from the briefs it may be stated that the claim·is that the decree is against the weight of the evidence, unsupported by the evidence and contrary to law.

Appellee insists that we may not weigh the evidence because the motion for new trial was filed after the opinion of the Trial Court and before the judgment entry. Sec. 11578 GC. The decretal entry was filed in the Trial Court on the 11th of December, 1948, and a separate entry of the same date, but apparently succeeding the judgment entry, recites the overruling of the motion for new trial.

A similar situation developed under the former §11578 GC in In Re Lowery, 66 Oh Ap 437. This Court held that although the filing of the motion was premature, the fact that the Court took cognizance of and acted upon it required that we give it consideration as though it had been filed according to the terms of the statute. The Supreme Court affirmed our

judgment but in an opinion, which, no doubt, resulted in the enactment of the new §11578 GC, held that the motion was filed within time because the written opinion of the Trial Judge constituted a decision rendered.

Inasmuch as our holding has not been reversed, we will adhere to it and consider the assignment that the decree is against the weight of the evidence.

There is some question whether or not under the present provisions of §11576-1 GC the weight of the evidence may be considered without a motion for new trial. The somewhat indefinite language of the statute is,

"An application for a new trial shall not be necessary as a prerequisite to obtain appellate review as to matters specified in subdivision 6 and 8 of §11576 GC provided such matters have been submitted to the Trial Court and the evidence to be considered or the error claimed appears as part of the record, or as to any other matter which the record shows was called to the attention of the Trial Court by objection, motion, or otherwise."

Because of the factual development, we have little difficulty in disposing of the question of the weight of the evidence. The defendant by his denials, later admissions of subject matter which he had denied and by his improbable and unrealistic statements gave full support to the Trial Judge to disregard his testimony on material and determinative issues and to accept in full faith the testimony of the plaintiff.

We test the decree upon the claim that it is not supported by the evidence and contrary to law.

The action was for divorce, the plaintiff alleging the marital relation between the parties, that two children were born of the marriage and charging gross neglect of duty. Upon the averments of the petition, it was incumbent upon the plaintiff to prove the marital status of the parties and this she undertook to do by establishing a common law marriage.

Upon two of the elements, which frequently are associated as essential to the establishment of common law marriage, there is no difficulty in reconciling the proof, namely, the contract of marriage by words de praesenti, and the cohabitation of the parties as husband and wife thereafter. The third element which presents the difficulty is the reputation of the marriage or the sufficiency of the holding out by the parties of the marital relation.

An analysis of the adjudications on the subject of common law marriage discloses some uncertainty whether or not the contract being proven de praesenti, the marriage is established without further proof of cohabitation and holding out. It is said in Herd v. Herd, 194 Ala. 613, L. R. A. 1916 B, 1243, that,

"Mr. Chancellor Kent in the fifth and subsequent editions of his Commentaries says, 'If the contract be made per verba de praesenti, and remains without cohabitation, or if made per verba de futuro, and be followed by consummation, it amounts to a valid marriage, in the absence of all civil regulations to the contrary'."

Thus, in the early consideration of the subject it was only when the parties contracted in words of future import that it was a further requisite to prove the cohabitation and holding out to establish the marriage. This distinction has been carried through the later authorities, Re: Estate of Hulett, deceased, (Minn.) 34 L. R. A. 384, where at page 397, it is said:

"The whole law on the subject is that, to render competent parties husband and wife, they must and need only agree in the present tense to be such, no time being contemplated to elapse before the assumption of the status. If cohabitation follows, it adds nothing in law, although it may be evidence of marriage. It is mutual, present consent, lawfully expressed, which makes the marriage."

Citing 1 Bishop, Marriage, Divorce and Separation, paragraphs 239, 313, 315, 317; Norrell v. Norrell (Ind.) 44 N. E. (2nd), 97, and particularly at page 99 of the opinion. Likewise the texts. 35 Am. Jur. 199:

"The view that cohabitation and reputation are not essential to a common law marriage is based upon the premise that marriage is a contract relation and hence that the fact of marriage may be established by proof of a contract only. This premise being admitted, cohabitation and reputation merely become evidential facts, from which the existence of the contract may be inferred."

Citation is made to authorities from seven states to support the text; and 55 C. J. S. 852.

Some strength is lent to the theory underlying the authorities which was have discussed by our own statute, §11989 GC, providing,

"proof of cohabitation and reputation of the marriage of the parties, shall be competent testimony to prove such marriage, and may be within the discretion of the court, **sufficient evidence thereof.**" (Emphasis ours.)

This statute has been on the books for many years, March 11, 1853. It is significant that it says nothing whatever about the obligation of proving a contract by words de praesenti and it is logical to hold that when the elements set out in the statute are established without respect to any other proof of agreement between the parties, the marital relation has been established.

In **Duncan v. Duncan, et al., 10 Oh St 181,** our Supreme Court determined that,

"mutual promises to marry in the future, though made between parties competent to contract, and followed by cohabitation as husband and wife, is not, in itself, a valid marriage,"

and Judge Brinkerhoff takes issue with Greenleaf, Kent and other distinguished writers, as well as Judges of many of the Courts, on the proposition that an informal marriage ever could have been found to exist if predicated upon a contract to marry per verba de futuro. This decision was released, December term, 1859, after the enactment of R. S. 5698, now §11989 GC.

Here, it is the contention of the appellant that the relations between the parties was meretricious in its inception and so continued at all times; that the twelve days during which they lived together at a tourist camp was but a continuation of the illicit relationship and the so-called holding out as husband and wife was a sham and used solely and knowingly for the purpose of creating a false impression as to the true relationship. This view, the Trial Judge could have taken, but refused to accept. The holding out was to the landlady at the tourist camp where the parties lived for about two weeks and to others who were in the camp at the time. There was no holding out by the parties as husband and wife in the immediate community in which they lived, although the plaintiff did register at the hospital where the twins were born as Mrs. Paul J. Gatterdam and the children were registered under the name of Gatterdam. The factual development is somewhat different than in some of the cases which we hereinafter cite in that, although it may be concluded that the parties in good faith agreed to become husband and wife and

entered that status upon the common purpose and maintained it for a time, difficulty developed between them which may explain the failure to hold themselves out as husband and wife when they returned to Columbus. It also further appears that the defendant had led the plaintiff to believe that, in addition to the agreement between them, he would arrange for a ceremonial marriage and the plaintiff relied upon this promise until in September when the relationship between the parties was broken off by the defendant.

One of the early cases considered by our Supreme Court was **Carmichael v. State of Ohio, 12 Oh St 553,** a review of a conviction of bigamy. There had been a solemnization of the marriage by one who had no such authority under the laws of the State. After the ceremony there had been cohabitation by the parties as husband and wife. It was held that these facts supported the conclusion that the marriage had been consummated. The trial judge had charged that,

"It made no difference whether the person so solemnizing said marriage was authorized to do so or not; that if solemnized by whomsoever, it was a marriage if followed by cohabitation as husband and wife."

So far as the opinion discloses, there was no further elaboration of the meaning of cohabitation as employed in the charge. The opinion by the learned Judge Gholson is interesting reading. He quotes from Dalrymple v. Dalrymple, 2 Hagg. C. R. 54, to the effect that,

"Marriage, in its origin, is a contract of natural law; * * * In civil society it becomes a civil contract, regulated and prescribed by law, and endowed with civil consequences."

At page 559, this observation is made:

"But when it is stated, in general language, that a contract per verba de praesenti constitutes a valid marriage, the mind feels some hesitation in assenting to the naked proposition, and a desire, in language attributed to Lord Eldon, to have it clothed in cirucmstances."

But at page 560, quoting from Lord Denman in Queen v. Millis, 10 Cl. & Fin. 682,

"A solemn contract of marriage executed per verba de praesenti, does in fact constitute a marriage."

He concludes at page 560:

"The circumstances of publicity in entering into the contract, and of cohabitation thereafter as husband and wife, are most important to show the intent with which any words were used, and without circumstances, under the manifest policy of our laws on the subject, and the habits and feelings of our people, an intent to form the honorable relation of marriage could not be properly found."

It will be noted that he does not define cohabitation specifically and we are not materially aided by the original quotations from the opinion which are his own and not carried into the syllabus.

The leading case in Ohio is **Umbenhower v. Labus, 85 Oh St 238**, the syllabus of which is:

"An agreement of marriage in praesenti when made by parties competent to contract, accompanied and followed by cohabitation as husband and wife, they being so treated and reputed in the community and circle in which they move, establishes a valid marriage at common law, and a child of such marriage is legitimate and may inherit from the father."

Substantially the same pronouncement is made in the first syllabus of **Markley v. Hudson, 143 Oh St 163.** The second syllabus of this case says that,

"While such agreement to marry in praesenti must be proved by clear and convincing evidence, it may be established by proof of the acts, declarations and conduct of the parties and their recognized status in the community in which they reside."

This statement lends strength to the theory that the sine qua non of common law marriage is the agreement to marry and permits the interpretation that the other elements are evidential which, if strong enough, may establish the contract in the agreement to marry in praesenti without any direct proof on the subject.

It should be noted that in Umbenhower v. Labus the Court was treating of facts which were developed to support the claim that the marriage had been established and the syllabus, accepting these facts as established, announces that they are sufficient to support an adjudication of the existence of the common law marriage. The situation developed is well presented in the opinion in Re: Est. of Hulett, supra, where, after

saying that expressions of some courts had been made to the effect that in order to constitute a valid marriage, the agreement to marry should have been subsequently acted upon by the parties living together professedly as husband and wife, the Judge makes this statement:

"In some cases where such expressions were used the court was merely stating a proved or admitted fact in that particular case, while in others the contract of marriage was sought to be proved by habit and repute, and the courts merely meant that the act of parties in holding themselves out as husband and wife is evidence of a marriage."

In Lefkoff v. Sicro, Ga. 6 S. E. 2d, 687, 133 A. L. R. 738, and annotation at 758, it was held that,

"If a man and woman, competent to do so, voluntarily and in good faith, contract to then assume the status of man and wife, they are considered by the common law as married."

It was held that the Trial Judge erred in charging the jury that there could be no common law marriage if either or both of the parties concealed from the public generally such claimed relation of husband and wife. In Catlett v. Chestnut, Fla., 146 So. 241, 91 A. L. R. 212, it was determined that:

"Something more than a secret or undisclosed agreement between the parties must be sought to establish a common law marriage."

but,

"Testimony as to a present express agreement to be husband and wife, of cohabitation and the conception of a child, and of an open reference by the man to the woman as his wife to a physician called to attend her, is sufficient to carry to the jury the question of the existence of a common law marriage."

And further:

"A common law marriage remains in full force until it is dissolved by law or death of one of the parties, and it is not destroyed by subsequent concealment of or maintaining of secrecy concerning the relationship between the parties."

The most comprehensive authority on the immediate question is that of Peters v. Peters, Colo. 215 Pac. 128, 33 A. L. A. 24, and the annotation at page 27. It is grounded upon the thesis that,

"General reputation in the community of the relationship of husband and wife is not essential to the validity of a common law marriage,"

The annotation bears the heading, "Habit and Repute as Essential to Common Law Marriage". There are compiled the cases holding for, and contra the view, that, habit and repute are essential to the establishment of common law marriage. Formidable and extensive authority is cited both ways. Upon the question, it is said in Herd v. Herd, supra.

"There is not only lack of unanimity but great conflict, and, in the language of the Supreme Court of the United States, the conflict amounts almost to a state of anarchy."

One of the leading cases cited to the effect that habit and repute are essential is Grigsby v. Reib, Tex. 153 S. W. 1124, L. R A. 1915 E 1, which holds it to be a fallacy that marriage is a civil contract and that the "truth is that civil government has grown out of marriage, marriage by cohabitation, not by contract * * *."

This extended discussion is only indulged in an effort to determine whether or not both cohabitation and a holding out must be proven in addition to the bare proof of the contract to marry. There is both cohabitation and holding out in this record. Quare,-Was the holding out sufficient to meet the requirement of the law?

The disturbing cases are those of Re: Est. of Redman, 135 Oh St 558, and Markley v. Hudson, 143 Oh St 163. The Redman authority is a per curiam in which the language of the opinion is presumed to be the expression of every member of the Court. In the Redman case, the issue upon which the determination rested was whether or not there was any proof of a contract of marriage in terms of present tense. The Court says that the essential requirements of marriage are stated in the syllabus of Umbenhower v. Labus, 85 Oh St 238, which we have heretofore discussed.

Markley v. Hudson holds that the agreement to marry in praesenti may be proven by acts, declarations and conduct of

the parties and their recognized status in the community in which they reside. Second syllabus. But it does not determine that the repute of the marital relation in the community in which the parties live must be established if the requirements as to the contract are met by specific proof, followed·by cohabitation as husband and wife.

We are convinced, as was the Trial Judge, that this marriage ·was, or was not, complete when the parties left the tourist camp. Had the parties come back to Columbus and held themselves out there as husband and wife, it should have resulted in more evidence of the marriage but it could not have changed their status.

Every case must rest on its own factual development. It is permissible to conclude that upon this record the defendant changed his attitude toward the plaintiff, the agreement into which he had entered and the status which he had consummated, after he came back to Columbus to believe that in good faith they were entering into a marriage relationship, followed by cohabitation and holding out, invalidate that status by changing attitude toward the whole matter when he returns to the community in which he lives. We do not believe that he should be permitted to do so in view of the fact that it involves the legitimacy of the children, which clearly are the offspring of the parties. The conduct of the defendant in securing medicine and using other devices to prevent the birth of the children is convincing under all the other circumstances that he recognized them as his own.

In the Umbenhower case the legitimacy of a child was involved and the Court alludes to that fact, when it says:

"Such informal marriages are seldom recognized and are held valid by courts only to protect the rights of innocent persons."

In **Dirion v. Brewer, Admr., 20 Oh Ap 301,** Judge Vickery comments on the fact that the law will indulge all presumptions favoring legitimacy.

We are mindful that we have here a borderline case of proof of common law marriage. Its invalidity, if at all, is found in the fact that the mutual holding out of the parties as husband and wife was not in the community in which they reside. There was, however, proof of a holding out with those with whom they normally came in contact at the time of the marriage contract and of their living together as husband and wife.

This case differs from any that we have found in that the period of acquaintance of the parties was limited and the time from the date of the claimed marriage and the breaking up of the relationship only covered a period of time from June to September, 1948, and the application of the rule that there must be a holding out must be considered in the light of the circumstances attending. This case also is unlike many in the books in that it involves no immediate property rights. The plaintiff is not insisting upon sharing any estate and the marital relationship which she claims existed she has had dissolved.

The birth and presence of the twins may not be permitted to change the necessary proof essential to the common law marriage but their conception and birth is of probative effect, in the light of all the circumstances, because they lend strength to the claim of the plaintiff that the defendant, knowing of her probable pregnancy, acted upon it and that it was an inducement to the agreement of marriage.

Granting to the trial judge the right to weigh and resolve the facts in this case, we cannot say that the judgment is unsupported by the evidence nor contrary to law.

The judgment will be affirmed.

MILLER, PJ, and WISEMAN, J, concur.