Mary J. CUNNINGHAM, Appellant,

v.

Patricia R. HARRIS, Secretary of Health and Human Services, Appellee.

No. 80–1615.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 3, 1981.

Decided Sept. 1, 1981.

Rehearing and Rehearing En Banc Denied Sept. 1, 1981.

Paul E. Meyer, Greensboro, N. C. (Robert S. Payne, Greensboro, N. C., Douglas Scott, Central Carolina Legal Services, Inc., on brief), for appellant.

Dennis R. Williams, Asst. Regional Atty., Dept. of Health and Human Services, Atlanta, Ga. (H. M. Michaux, Jr., U. S. Atty., Durham, N. C., Carl H. Harper, Regional Atty., Washington, D. C., on brief), for appellee.

Before BRYAN, Senior Circuit Judge, and BUTZNER and MURNAGHAN, Circuit Judges.

BUTZNER, Circuit Judge:

Mary Jackson Cunningham appeals from the judgment of the district court affirming the decision of the Secretary of Health and Human Services to deny her widow's insurance benefits under § 202(e) of the Social Security Act, 42 U.S.C. § 402(e). The sole issue on appeal is whether the claimant and Richard Cunningham, the wage earner, were "living in the same household," as defined by § 216(h)(1)(B) of the Act, 42 U.S.C. § 416(h)(1)(B), when Richard died on August 29, 1959. We believe they were and that Mary is entitled to widow's benefits under the Act.

## I

Richard Cunningham married Elizabeth Mills Cunningham in 1935 in Greenville, South Carolina. They continued to live together until 1945, when the couple separated permanently. Following their separation, neither Richard nor Elizabeth sought a divorce.

Eight years later, in 1953, Richard married Mary Jackson Cunningham, the claimant, in Guilford County, North Carolina. Mary was unaware of Richard's previous marriage for the first five years of their six-year marriage. Upon learning that her marriage was not legally valid, Mary sought to annul her marriage, have Richard obtain a divorce from his first wife, and then remarry him. Continuing financial problems, however, prevented Richard from divorcing Elizabeth prior to his death in 1959.

At the time of his death on Saturday, August 29, 1959, Richard had been away from home for five days. The previous

Monday, Mary had asked him to leave their apartment because he was aggravating her. Richard moved to a boarding house, taking with him only a few of his belongings. Mary testified that she expected him to return and that this type of brief separation following an argument occurred three or four times during their marriage.

Richard telephoned Mary on Friday and told her that he would return the following evening. He did not say whether his return would be temporary or permanent and Mary did not ask. Mary described their conversation as follows: "Well, first he said to me—he said, do you want to see me? He called me, and actually he said do you want to see me? I said no. And he said, well, I'll see you tomorrow night. I said okay." By Saturday, Mary was looking forward to Richard's return, and she prepared a special dinner for the occasion.

Richard never returned to their apartment. He died of a heart attack Saturday morning, and Mary learned of his death that afternoon.

Mary applied in 1976 for Social Security widow's insurance benefits on the account of Richard, the wage earner. To receive widow's benefits under 42 U.S.C. § 402(e), a claimant must qualify as the "surviving wife" of the wage earner under one of two methods. *See* 42 U.S.C. § 416; Martin, *Social Security Benefits for Spouses*, 63 Cornell L.Rev. 789, 817–19 (1978).

Under the state marital status test, a claimant is entitled to benefits if the courts of the state of the wage earner's domicile at the time of his death would find either that the marriage was valid or that the survivor was entitled to intestate succession of per-

sonal property. 42 U.S.C. § 416(h)(1)(A). On appeal, Mary does not contend that she is entitled to benefits under this section.

If a marriage is invalid under the applicable state law, a claimant may still receive widow's benefits under the "purely federal marital status test." *Davis v. Califano*, 603 F.2d 618, 620 (7th Cir. 1979). Section 416(h)(1)(B) of Title 42 U.S.C., generally known as the "deemed spouse" provision, provides that when (1) the claimant married the wage earner in good faith, without knowledge that a legal impediment existed under state law, and (2) the claimant and the wage earner were living in the same household at the time of the wage earner's death, the marriage will be deemed valid.[1]

The Social Security Administration denied Mary's application for widow's benefits and her request for reconsideration. The Notice of Disapproved Claim states that Mary is not entitled to benefits under the state marital status test, 42 U.S.C. § 416(h)(1)(A), because Richard's prior marriage had not been terminated. It further states that, because she and Richard were not living together when he died, she does not qualify for benefits under the deemed spouse provision, 42 U.S.C. § 416(h)(1)(B).

Mary then requested a hearing. The administrative law judge found that Richard was planning to return home the evening of his death. He also noted that under the Social Security Administration regulations then in effect, Richard's temporary absence did not preclude a finding that Richard and Mary were "living in the same household" if the evidence established that the couple, nevertheless, reasonably expected to resume physically living together at some time in

---

1. 42 U.S.C. § 416(h)(1)(B) provides in pertinent part:

In any case where under subparagraph (A) an applicant is not (and is not deemed to be) the ... widow ... of a fully or currently insured individual, ... but it is established to the satisfaction of the Secretary that such applicant in good faith went through a marriage ceremony with such individual resulting in a purported marriage between them which, but for a legal impediment not known to the applicant at the time of such ceremony, would have been a valid marriage, and

such applicant and the insured individual were living in the same household at the time of the death of such insured individual ... For purposes of this subparagraph, a legal impediment to the validity of a purported marriage includes only an impediment (i) resulting from the lack of dissolution of a previous marriage or otherwise arising out of such previous marriage or its dissolution, or (ii) resulting from a defect in the procedure followed in connection with such purported marriage.

the reasonably near future. 20 C.F.R. § 404.1112 (1979).[2] Paragraph (c) of the regulation states, however, that "[a] finding of temporary absence would not be justified . . . where the parties had ceased to live in the same place of abode because of marital difficulties and had not resumed living together before death." 20 C.F.R. § 404.-1112(c) (1979). Consequently, the administrative law judge ruled that Mary "failed to carry the burden of proving entitlement of widow's insurance benefits under Section 202(e) of the Social Security Act."

The decision of the administrative law judge was affirmed by the Appeals Council and adopted as the final decision of the Secretary. Mary filed suit in district court pursuant to 42 U.S.C. § 405(g), seeking reversal of the Secretary's decision denying her claim. The district court referred the case to a magistrate, who concluded that there is substantial evidence to support the administrative law judge's finding that Mary and Richard were not living in the same household at the time of Richard's death. The district court entered a judgment affirming the Secretary, from which Mary appeals.

II

The Social Security Act provides that the factual findings of the Secretary shall be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Richardson v. Califano*, 574 F.2d 802, 803 (4th Cir. 1978). When evidence has not been properly evaluated because of an erroneous interpretation of the law, however, the scope of our review is not similarly constrained. *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

Applying these standards, we cannot accept the administrative law judge's determination that when Richard died, he and Mary were not living in the same household, as contemplated by 42 U.S.C. § 416(h)(1)(B). This ruling is not supported by substantial evidence, and it is based on an erroneous interpretation of the phrase, "ceased to live in the same place of abode," in 29 C.F.R. § 404.1112(c) (1979). Under this interpretation of the regulation, any physical separation due to marital difference, regardless of its length or the intent of the parties, would preclude the award of widow's benefits under the deemed spouse provision of § 416(h)(1)(B).

■ While an agency's interpretation and application of its own regulation is entitled to great weight, *see* 4 Davis, *Ad-*

2. 20 C.F.R. § 404.1112 (1979) states in pertinent part:

(a) *Defined.* A husband and wife were "living in the same household" if they customarily lived together as husband and wife in the same place of abode. The temporary absence of one spouse from such place of abode does not preclude a finding that they were "living in the same household."

(b) *Temporary absence.* The absence of one spouse from the place of abode in which both had customarily lived as husband and wife shall, in the absence of evidence to the contrary, be considered temporary:

(1) If such absence was due to service in the armed forces of the United States; or

(2) If the period of absence from their place of abode did not exceed 6 months, and neither spouse was outside the United States, and the absence was due to business or employment reasons, or because of confinement in a penal institution or in a hospital, nursing home, or other curative institution; or

(3) In any other case, if the evidence establishes that despite such absence they nevertheless reasonably expected to resume physically living together at some time in the reasonably near future.

. . . .

(c) *Absences other than temporary.* In situations other than those described in paragraph (b) of this section, the absence shall not be considered temporary, and the parties may not be found to be living in the same household. A finding of temporary absence would not be justified where one of the parties was committed to a penal institution for life or for a period exceeding the reasonable life expectancy of either, or was under a sentence of death; or where the parties had ceased to live in the same place of abode because of marital difficulties and had not resumed living together before death.

ministrative Law § 30.12, we are also bound to interpret the Social Security Act as a program of social insurance on which people can rely to provide for themselves and their dependents. *Rosenberg v. Richardson*, 538 F.2d 487, 490 (2d Cir. 1976). Claimants are the beneficiaries of insured wage earners, not recipients of government gratuities, and are entitled to a broad construction of the Act. *See Haberman v. Finch*, 418 F.2d 664, 667 (2d Cir. 1969). In practical terms, when a Social Security Act provision can be reasonably interpreted in favor of one seeking benefits, it should be so construed. *Damon v. Secretary of HEW*, 557 F.2d 31, 33 (2d Cir. 1977). Viewed in this light, we cannot accept the Secretary's restrictive interpretation.

■ The administrative law judge's finding that Richard intended to return home is supported by ample evidence in the record. Richard resumed living with Mary within a week following the couple's three or four previous arguments. When Richard went to a boarding house, he took only a few of his belongings. The others he left at home with Mary. He telephoned Mary four days later and stated his intention to return the following evening. Mary expected Richard to return and, despite some initial hesitation, told him that he could come back. She was making preparations for the reunion when she was informed of his death.

It is clear from this evidence that Richard and Mary, although separated for five days, had not ceased living together either legally or factually. They reasonably expected to continue living together following their brief disagreement, had not death intervened.

■ A review of the examples of "absences other than temporary" listed in § 404.1112(c) indicates that Congress only sought to preclude a finding of temporary absence when the absence was clearly long-term or permanent. Other non-temporary absences under paragraph (c) occur when one of the parties was under a sentence of death or committed to a penal institution for life or a period exceeding the reasonable life expectancy of either party. Confine-

ment in an institution for six months or less is conclusively a temporary absence. § 404.1112(b)(2). In this context, we cannot conclude that Congress intended paragraph (c) to preclude an award of widow's benefits where the parties intended to resume physically living together following a brief separation.

*McKee v. Secretary of HEW* [1980] Unempl.Ins.Rep. (CCH) ¶ 16,999 (E.D.N.Y. Feb. 22, 1980), does not support the Secretary's contention that a finding of temporary absence is not appropriate in this case. In *McKee*, the claimant and wage earner had been living apart due to marital difficulties for at least two years. The wage earner resided in a different state from the claimant, and there was uncontradicted evidence that he had a girlfriend at his new residence. The wage earner and the claimant did not intend to resume physically living together. In contrast, Mary and Richard were separated for only five days, and the administrative law judge found that Richard intended to return home.

The regulation on which the Secretary relies, 20 C.F.R. § 404.1112 (1979), was deleted in June, 1979, and recodified at 20 C.F.R. § 404.347 (1980). This new regulation further supports our conclusion that Richard and Mary were living in the same household at the time of Richard's death. Although this regulation was not in effect at the time of Mary's hearing, it was not intended to alter existing law. Instead, the primary purpose of the recodification was "to restate the rules so that they will be easier for the public to understand and use." 44 Fed.Reg. 34,479 (1979).

The new regulation states in pertinent part:

> Living in the same household means that you and the insured customarily lived together as husband and wife in the same residence. You may be considered to be living in the same household although one of you is temporarily absent from the residence. An absence will be considered temporary if it was due to service in the U.S. Armed Forces. An absence of less

than 6 months is also considered temporary if neither you nor the insured were outside of the United States during this time and the absence was due to business or employment; or to confinement in a hospital, nursing home, other medical institution, or penal institution. Other absences may be considered temporary if it is shown that you and the insured could have reasonably expected to live together in the near future.

20 C.F.R. § 404.347 (1980).

The specific reference to absences due to marital difficulties, relied upon by the administrative law judge, is not included in the new regulation. This regulation, therefore, supports our view that Congress did not intend a more restrictive test for absences due to marital difficulties. Nor did Congress intend to prohibit the award of benefits to individuals separated because of marital difficulties without regard to the length of the separation or the intention of the parties. The crucial factor, as the new regulation confirms, is the reasonable expectation of the parties. Under this test, Richard's absence qualifies as temporary.

Ordinarily we would remand this case to the Secretary for reconsideration in light of the new regulation. See Hicks v. Califano, 600 F.2d 1048, 1050 (4th Cir. 1979). Remand, however, is unnecessary because the new regulation merely restates the law in effect at the time of the administrative proceedings, and its application would not alter the result of this case.

■ Because Richard was only temporarily absent, we conclude that, at the time of his death, he and Mary were living in the same household, as defined by 42 U.S.C.

§ 416(h)(1)(B). The contrary finding of the administrative law judge is not supported by substantial evidence, and it is based on an erroneous interpretation of the Social Security Act. Accordingly, we reverse and remand this case to the district court with directions to remand it to the Secretary for payment of widow's insurance benefits.[3]

REVERSED AND REMANDED.

ALBERT V. BRYAN, Senior Circuit Judge, dissenting:

As the majority opinion quite clearly explains, appellant Mary J. Cunningham (the claimant) cannot recover widow's Social Security insurance benefits unless she proves by substantial evidence that at the time of the death of her husband, Richard Cunningham (the wage earner), the two were "living in the same household." While I do not find she should succeed, I do concede that, in view of the tolerance of Section 216(h)(1)(B) of the Social Security Act, 42 U.S.C. § 416(h)(1)(B), she was qualified to make the claim, even though the wage earner was not proved free from his earlier marriage. However, I dissent from the majority's award of benefits to the claimant.

In my evaluation the record fully warranted the judgment of the District Court upholding the decision of the Secretary that the claimant and the wage earner were not living in the same household when he died. My reasons are these:

1. The Secretary's findings are made conclusive by the Act and I perceive no infirmity in them on the evidence.

2. The Administrative Law Judge (ALJ), after a close and full hearing of the

---

3. In his brief, counsel for the Secretary also maintains that even if Richard's absence prior to his death was temporary, Richard and Mary were not "living in the same household" because they had not "customarily lived together as husband and wife in the same place of abode." 20 C.F.R. § 404.1112(a) (1979). Counsel supports this assertion with the following evidence: (1) early in their marriage, Mary lived alone in a boarding house for one or two months; (2) during the marriage Richard served 30 days in jail for stealing a pistol and 60 days for assault; and (3) as noted above,

Mary testified that Richard left home three or four times for a period of a week during the marriage. Viewed in the context of a six-year marriage, these brief separations do not support the assertion that Richard and Mary did not customarily live together.

Further, the administrative law judge did not decide that Richard and·Mary had not customarily lived together during their marriage. We cannot affirm the decision of the Secretary on grounds not invoked by the agency. See SEC v. Chenery Corp., 318 U.S. 80, 94–95, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943).

evidence, found on the evidence and concluded in law, with the Appeals Council and the Secretary approving, that the claimant had no entitlement to the insurance benefits.

3. On appointment by the District Court, its Magistrate examined the testimony before the ALJ of the witness or witnesses adduced on behalf of the claimant and held that the claimant and the wage earner were not living in the same household when the husband died.

4. With the Magistrate's report coming on for hearing before the Court, District Judge Gordon declared:

The Court has appropriately reviewed plaintiff's objections and finds that they do not change the substance of the Magistrate's Findings and Recommendations which are hereby adopted.

The majority recognizes the generally controlling force of these determinations but rejoins that they stem from "an erroneous interpretation of the law" by the ALJ and hence do not enjoy the presumption of correctness accorded them by law. The error assigned is the ALJ's holding that the absence of the husband was not "temporary" under Section 404.1112(c), Social Security Regulation No. 4.* The Regulation entitled "Absences other than temporary" is said to be inapplicable since the evidence shows that both the wage earner and his wife *expected* his return home on Saturday. However, the ALJ had explicitly found that "the preponderance of evidence fails to establish that the claimant and the wage earner reasonably expected to resume physically living together at some time in the near future and prior to the wage earner's death."

But when invoking expectancy as a consideration, the testimony on which the claimant relies proves with at least equal force that the wish of these two persons was to live apart. Indeed, that it was their preference is tellingly manifested by the couple's conduct between the time of their marriage on August 29, 1953 and the husband's death, August 29, 1959. While on three or four occasions they had had "spats" wherein the two had temporarily separated, they each time had "made up," returning to a common household. However, in the last such incident, the claimant testified that she had told her husband to leave, that he had left on Monday and that he had called on Friday to announce his intention to return home the following day. He asked her, she continues, if she wanted to see him and she said, "No." He had been living with his sister in the same city during that week and died Saturday, the day of his appointed return.

At all events, whether they were "living in the same household" or expected to do so was a question of fact primarily for the ALJ to resolve. His finding had the support of at least substantial evidence. It was made after the claimant testified before him in person. Consequently, he had the opportunity and duty to ascertain the claimant's credibility by applying the same standards as would a jury. He did not believe her "in view of the many ambiguities and inconsistencies perceived to be present in both the claimant's testimony and the documentary evidence herein under consideration." The District Judge's approval of the Magistrate's conclusions to the same effect certainly are not "clearly erroneous," and so must stand. Fed.R.Civ.P. 52(a).

I would affirm the judgment now on appeal.

---

* The Regulation as relevant gives ground for the ALJ's finding that the separation was not merely temporary: "A finding of temporary absence would not be justified . . . when the parties had ceased to live in the same place of abode because of marital difficulties and had not resumed living together before death." Although the 1980 amendment has no play here, at most it introduces expectancy as a possible consideration, but the ALJ, to repeat, found there was no adequate proof here of such an expectancy.