Eugenia SMERECZYNSKI,
Plaintiff–Appellant,

v.

SECRETARY, DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.

No. 90–1792.

United States Court of Appeals, Sixth Circuit.

Submitted March 12, 1991.

Decided Sept. 16, 1991.

Diane M. Kwitoski (briefed), Goodman, Eden, Millender & Bedrosian, Detroit, Mich., for plaintiff-appellant.

Donna Morros Weinstein, Chief Counsel, Ayrie Moore (briefed), Dept. of Health and Human Services, Office of the Gen. Counsel, Region V, Chicago, Ill. and Francis L. Zebot, Asst. U.S. Atty., Office of the U.S. Atty., Detroit, Mich., for defendant-appellee.

Before KRUPANSKY and BOGGS, Circuit Judges, and ENGEL, Senior Circuit Judge.

BOGGS, Circuit Judge.

Eugenia Smereczynski appeals the denial of her application for benefits as a divorced wife. After being denied benefits at the administrative level, Smereczynski appealed to the United States district court, which affirmed the Secretary's decision. We now reverse.

Mrs. Smereczynski is a native of an area of the Ukraine now controlled by the Soviet Union, but which, at the time of her birth, was a part of Poland. Mrs. Smereczynski, like many others who lived in the same place and time as she did, was swept up in the cataclysm of war and turmoil that swept through Europe in the 1940s. Eugenia met Mikolaj Smereczynski in Germany in 1945; both were "displaced persons" at the end of World War II. The two became involved. At the time, Mikolaj told Eugenia that he had previously been married, but indicated that his first wife was dead. Mikolaj has stated that he is unsure of the English spelling of his first wife's name, but that he believes it to be "Gina Werfaw." There was testimony, though not corroborated by records or documents of any type, that Eugenia and Mikolaj had a marriage ceremony in Germany in 1946. Subsequently, the two of them left for England. Unfortunately, England was, at the time, unwilling to accept immigrants who were married. Consequently, Eugenia and Mikolaj entered together, claiming to be unmarried. They were, however, also married in England, this time in 1949. Unlike the 1946 marriage, the record of this one survives and is a part of our record.

In 1959, they emigrated from England to the United States. The two settled in Cleveland, where they had three children. Unfortunately, the two began to hear rumors, relayed to relatives in England and then to America, that Mikolaj's first wife was alive. The two were divorced in July 1965. The stories that Mikolaj's first wife was alive seem to have been a precipitating factor of their divorce, though neither had any hard evidence that the first wife was alive and the divorce decree is based on "willful absence and neglect of duty." We have, in the record before us, a death certificate from the Soviet Ukraine for one "Maria Ivanivna Smereczynska," who died in 1979. The Administrative Law Judge concluded that this death certificate be-

longed to the first Mrs. Smereczynski, and that she was therefore alive throughout the period of the "marriage" of Eugenia and Mikolaj.

Based on this evidence, the ALJ concluded that Eugenia was never legally married to Mr. Smereczynski, because the first wife was still alive at all relevant times. He further concluded that the first wife had not divorced Mikolaj, and that this prevented Mikolaj from ever again becoming legally married. Other than this single impediment, Eugenia is clearly both eligible for and entitled to divorced wife's benefits.[1]

In 1949 (or 1946), when Eugenia and Mikolaj had their wedding ceremony, the first Mrs. Smereczynski could either have been dead or alive. There is no excluded middle here; we know that it is either one or the other.

■ The ALJ concluded that the first wife was alive. At the outset, we are skeptical about whether this conclusion was supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 *citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126 (1938). The *Perales* case makes it abundantly clear that the normal rules of evidence do not govern Social Security hearings and that relevant hearsay evidence is often admissible. Nonetheless, the common law bars hearsay not for technical, legalistic reasons but rather because such evidence is often unreliable. Here, the triple or more hearsay evidence related to the ALJ by Mrs. Smereczynski herself[2] is of completely uncertain origin and reliability. Thus, standing alone, it would not constitute grounds for the decision that Mikolaj's first wife was still alive.

Nor does the death certificate provided by the Soviet government support the ALJ's conclusion. Mikolaj said that his first wife's name was Gina Werfaw. The name on the death certificate was Maria Ivanivna Smereczynska. Even allowing for the vagaries of translating a name from the Cyrillic to the English alphabet, "Maria Ivanivna" isn't anything like "Gina Werfaw." Thus, based on the evidence, we have little reason to believe that the first Mrs. Smereczynski was alive. If she was dead, of course, Eugenia and Mikolaj would have been be perfectly free to enter into a marriage.

Even if the first Mrs. Smereczynski was alive, however, there is some possibility that Eugenia and Mikolaj could have been married legally. The same hearsay reports suggesting that the first wife was alive suggest that she had married someone else, and that they had had several children themselves. Her divorce, like her death, would free Mikolaj and Eugenia to marry.

■ Even if the divorce or death took place after Mikolaj and Eugenia's marriage, the two still may have had a valid common law marriage under Ohio law. In order to have a valid common law marriage under Ohio law, one must prove the existence of three elements: 1) words of present intent to create a marriage; 2) cohabitation as husband and wife; and 3) holding out to the public as man and wife. *Gatterdam v. Gatterdam*, 86 Ohio App. 29, 85 N.E.2d 526 (1949). HHS argues that Eugenia and Mikolaj lack the first element, that is, that they did not make the requisite agreement *de praesenti*, at the present time, because they do not *now* wish to form a marriage. HHS misunderstands this element. The "present intent" required is the intent at the time of the alleged common law marriage, not at the time of the litigation. *Gatterdam* is an excellent example of this

---

1. 42 U.S.C. § 402(b)(1) provides that a divorced wife is entitled to social security benefits if she is unmarried, over the age of 62, and not independently entitled to benefits above an amount computed by a formula laid out in the statute. 42 U.S.C. § 416(d)(1) requires that a "divorced wife," for purposes of eligibility determinations, must have been married for at least 10 years.

2. We must commend Mrs. Smereczynski on her honesty. Had she simply refrained from speaking on this issue, there is little doubt that she would have been able to breeze through the process.

principle, since, in that case, the husband had changed his mind by the time of the litigation. *Id.* 85 N.E.2d at 530. Although it is not possible, under Ohio law, to marry someone else when one is already married, *see Dibble v. Dibble*, 88 Ohio App. 490, 100 N.E.2d 451, 462 (1950), a common law marriage can act to ratify a preexisting ceremonial marriage where an impediment is removed. *See Williams v. Williams*, 90 Ohio App. 369, 106 N.E.2d 655 (1951); *Hale v. Graham*, 85 Ohio App. 447, 86 N.E.2d 330 (1948). Accordingly, *if* the first wife did divorce Mikolaj, Mikolaj and Eugenia's marriage would be legal either as a valid ceremonial marriage or as a common law marriage. If this happened prior to 1955, Eugenia would still be eligible for benefits, as she would have the 10 years of marriage required under 42 U.S.C. 416(d)(1).

Thus, we can identify three possible scenarios. Scenario one is that the first wife died during the war. Given the events of the Ukraine during World War II, and given the paucity of the evidence that she remained alive, we believe that this scenario is the most likely, though we recognize that the ALJ rather than this court has the authority to make this determination. The second scenario is that the first wife survived but was considered divorced, under the laws of the Soviet Union, from Mikolaj. The hearsay reports that she lived also reported that she had a new husband and children, an act surely consistent with having gotten a divorce.[3] It is only under the third scenario—the first wife alive *and* not divorced from Mikolaj—that Eugenia would lose. There is *no* evidence to support this version.

■ The ALJ relied primarily on the general rule in Ohio (unlike most jurisdictions) that the burden is normally on the second wife to prove that the impediment of a preexisting marriage has been removed by divorce or the death of the first wife. *See Industrial Commission v. Dell*, 104 Ohio St. 389, 135 N.E. 669 (1922). The ALJ found this principle dispositive in ascertaining that Ohio courts would not conclude that Eugenia and Mikolaj were married. The ALJ's conclusion in this case is simply a legal conclusion regarding how the courts of Ohio would resolve the legal question of whether Eugenia and Mikolaj were married on these facts. Although we defer to the ALJ's resolution of factual questions, we do not defer to the ALJ's interpretation of state law. *See Stokes v. Heckler*, 773 F.2d 990, 992 (8th Cir.1985). *See also McGuire v. Califano*, 440 F.Supp. 1031, 1034 (D.Neb.1977) ("Since the heart of the McGuire administrative decision involves the consideration of California and Nebraska domestic relations law, no special deference need be paid to the expertise of the agency.").

We do not find the ALJ's legal conclusion regarding how the Ohio courts would treat this marriage persuasive, for three reasons. First, most cases of this type, like *Dell*, involve a "recreant husband" wandering about for no particularly good reason. *Dell*, 135 N.E. at 674. Here, there is no evidence that Mikolaj abandoned his first wife, or that he intended to be irresponsible. Second, most of the cases, also like *Dell*, involve a contest between the two spouses. *Ibid.* Here, however, the contest is between HHS and the second wife, and the equities are somewhat different. Mikolaj's first wife is, by hypothesis, dead and his current wife does not lose out. *See generally* 42 U.S.C. § 402 on computation of benefits. Finally, it is simply common sense that the records regarding persons displaced in the wake of a World War will sometimes be scantier than would otherwise be the case. To that extent, this case is *sui generis*. HHS has cited no cases to us suggesting that the Ohio courts have completely abandoned common sense in this regard. We therefore determine, as a *de novo* matter, that Ohio courts would have, under these circumstances, recognized the Smereczynskis as being married by 1955.

---

**3.** There is no basis on which the ALJ could credit some, but not all, of the hearsay statements.

Accordingly, we find that the Secretary's decision was not supported by substantial evidence. The decision below is therefore REVERSED and the case is remanded for an award of benefits.

ENGEL, Senior Circuit Judge, dissenting.

The parties, Secretary, and majority all agree that the marital status of the decedent and of the claimant for benefits as his widow must be determined by state law. See 42 U.S.C. § 416(h)(1)(A).[1] The parties are also agreed that Ohio is the state whose law governs here. Likewise, it is agreed that under Ohio law, as the majority states, the burden is normally on the second wife to prove that the impediment of a preexisting marriage has been removed by divorce or the death of the first wife. See Evans v. Indus. Comm'n, 166 Ohio St. 413, 143 N.E.2d 705 (1975); Industrial Comm'n v. Dell, 104 Ohio St. 389, 135 N.E. 669 (1922); see also Domany v. Otis Elevator Co., 369 F.2d 604 (6th Cir.1966).

Next it seems undisputed that Mikolaj was married in Russia before he met Eugenia. Thus, for Mikolaj to have been validly married to Eugenia his prior marriage must have been terminated either by the death of his first wife or by a divorce.

Unfortunately the record is unusually muddied concerning these facts. As evidenced by past conduct, both the wage earner and the claimant have shown themselves capable of misrepresenting their marital status and history in order to gain a particular advantage from the presence or absence of that status.[2] The ALJ took considerable testimony and, applying Ohio law, concluded that Eugenia had failed to prove that the impediment of the preexisting marriage had been removed either by divorce or death. In fact, the majority admits the complete uncertainty of the record in this respect. This being the case it would be my interpretation of Ohio law that the ALJ was not free simply to speculate on the existence of a circumstance which has not been proved merely on account of sympathy to the claimant. See Domany, 369 F.2d at 610 ("Under Ohio law that [preexisting] marriage is presumed to continue until proof of its termination.").

If substantial evidence is needed to support the ALJ's decision beyond the burden cast upon the first wife by Ohio law, it would seem to me to be provided and reinforced by the actual conduct of the parties, including Eugenia herself. The parties were in contact with the wage earner's family in Russia after the war. From whatever they learned,[3] they appear to

---

1. Under 42 U.S.C. § 416(h)(1)(B), an applicant who is not the wife of the wage earner as determined by state law may nevertheless be "deemed" his wife under federal law if three requirements are met. See Cunningham v. Harris, 658 F.2d 239, 241 (4th Cir.1981). At least one of those requirements, that the applicant was living with the wage earner at the time she filed her application, is clearly not met in this case. Accordingly, as the majority recognizes, appellant can only prevail, if at all, by proving that her marriage is valid under state law.

2. For example, aside from the fact that after their marriage in Germany they portrayed themselves as single individuals in order to get into England, Mr. Smereczynski recently claimed he had been married three times while his wife asserted that it was four or five times. Further, after appellant found out that the Department of Health and Human Services obtained a death certificate of the alleged death of her ex-husband's first wife, which was provided by Mr. Smereczynski, appellant stated: "If my ex-husband gave the information, I don't believe it. He has not been the most honest person."

3. The majority argues that the information appellant received through her family regarding the whereabouts and condition of the wage earner's first wife is "triple or more hearsay." While the majority recognizes that the normal rules of evidence do not govern Social Security hearings, Perales, supra, it nonetheless concludes that the common law should bar the aforementioned evidence because of its "completely uncertain origin and reliability." However, statements of personal or family history of another person are an exception to the hearsay rule if the declarant was "so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared." Fed.R.Evid. 804(b)(4)(B). Here the statements made by appellant's father and her other relatives, even if not based on personal knowledge, retain certain indicia of reliability because of the declarants' relationship to appellant and the fact that the statements of family history are against her best interest. In any event, the majority completely ignores Eugenia and the wage earner's non-assertive conduct which flowed from and is in harmony with the assertions made by the statements at issue.

have acted consistently with a belief that Mikolaj's first wife was not only still living but necessarily had not obtained a divorce. Eugenia's candor, which as the majority points out is commendable, indicates that she herself believed that Mikolaj was still married and this may indeed have been the principal basis why she felt she had to get a legal divorce because she considered that she was living in adultery. In my judgment, at least, this is fairly potent evidence under the circumstances which I do not believe the ALJ would have been warranted in disregarding, given the posture of Ohio law.

The majority claims that this court should defer to the ALJ's resolution of factual questions, but not to the ALJ's interpretation of state law. While that statement may be correct as a matter of law, it does not allow us to ignore Ohio's mandate that appellant prove that the impediment of Mr. Smereczynski's first marriage has been removed by divorce or the death of his first wife. The majority has done here exactly what this court criticized an Ohio district court for doing in *Domany:*

> The district court stated the proposition in reverse when he said, "There was no evidence to show that Andrew Domani *was* not divorced from his European wife." The proposition, under Ohio law, should have been that there was no evidence that a divorce *was* obtained from the European wife either prior to or after the second marriage.

369 F.2d at 611 (emphasis added).[4] Appellant has presented no evidence that the wage earner's first marriage was dissolved through death, divorce, or by any other means. On the contrary, she has admitted that the preexisting marriage was not dissolved at the time she married her ex-husband. Finally, the majority's attempt to invoke equity in place of well settled Ohio law on the basis that the HHS and the wage earner's second wife are involved, rather than two spouses, is not consistent with our precedent. *See id.* ("The attempted distinction on the ground that

Ohio would follow a different rule where a third party is the contestant is not valid."). Accordingly, while I have much sympathy for Eugenia, I must respectfully dissent.

---

4. The majority does not even cite to, let alone distinguish, *Domani.*